IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | 2 CA-CR 2012-0315 |
| Appellee, | ) | DEPARTMENT B |
| | ) | |
| v. | ) | O P I N I O N |
| | ) | |
| ANGELINO PAOLO BUCCHERI- | ) | |
| BIANCA, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. CR20111911001

Honorable Deborah Bernini, Judge

AFFIRMED IN PART; VACATED IN PART

Thomas C. Horne, Arizona Attorney General
  By Joseph T. Maziarz and Jonathan Bass                                    Tucson
                                                              Attorneys for Appellee

Harriette P. Levitt                                                        Tucson
                                                              Attorney for Appellant

E S P I N O S A, Judge.

¶1          After a jury trial, Angelino Buccheri-Bianca was convicted of five counts

of child molestation.   The trial court imposed a combination of concurrent and

consecutive sentences totaling fifty-one years' imprisonment, and a criminal restitution order (CRO) pursuant to A.R.S. § 13-805. On appeal, Buccheri-Bianca challenges the sufficiency of the evidence underlying his convictions and raises a number of other issues. For the following reasons, we affirm the convictions and sentences but vacate the restitution order.

**Factual Background and Procedural History**

¶2     We state the facts in a light most favorable to sustaining the verdicts. *See State v. Bible*, 175 Ariz. 549, 595, 858 P.2d 1152, 1198 (1993). In 2009, Buccheri-Bianca lived in the same apartment building as a family with five minor children, Alicia, Maya, Celina, Kendall, and Kyle.[1] He was in his late eighties and recently had broken his leg. The neighbor family occasionally helped him with errands, such as driving him to pick up groceries and prescriptions, and cleaning his apartment. Buccheri-Bianca sometimes asked the children to come to his apartment to pick up boxes of food, and he would give them candy and small gifts. Although the children's mother denied they ever had gone inside Buccheri-Bianca's residence, three of the children testified they had been in his apartment without other adults present and he had molested them.[2]

¶3     At trial, Kendall testified that occasionally he went to Buccheri-Bianca's apartment with his sisters Maya and Celina, and Buccheri-Bianca would tell the sisters to

_____

[1]In accordance with judicial policy for protecting the identities of minors and victims of crimes, the children's names are pseudonyms.

[2]Kyle told a forensic interviewer that Buccheri-Bianca had touched his penis on multiple occasions, but at trial he testified he could not remember having been touched. The jury acquitted Buccheri-Bianca of the counts of the indictment relating to Kyle.

leave, after which he would touch Kendall's "private parts." When Kendall protested, Buccheri-Bianca would use a "thick, brown rope" to tie his hands. Buccheri-Bianca never did this while Kendall's siblings were present, and after the incidents threatened Kendall that if he told anyone about the touching, Buccheri-Bianca would kill his whole family.

¶4        Maya testified she would sometimes go with her sister Celina to Buccheri-Bianca's apartment in order to pick up food that he would give to the family, and he would invite them inside. Maya told the jury about an occasion on which the two girls went to Buccheri-Bianca's apartment to get cooking oil, and he touched her vagina, over her clothes, in the kitchen. She stated he had touched her on multiple occasions in the kitchen. Maya also described a separate instance in which Buccheri-Bianca had pulled down Celina's pants and touched her vagina in the bedroom of the apartment. Maya noted that she had seen him touch Celina on at least one other occasion as well. Finally, Maya testified that Buccheri-Bianca told her and Celina that if they told on him, he was going to kill their family.

¶5        Celina too testified that Buccheri-Bianca would touch her and Maya together. Celina described two incidents in which Buccheri-Bianca partially removed her pants and touched her vagina in the living room of his apartment but denied he had ever touched her in his bedroom. Celina further stated she had observed Buccheri-Bianca do the same thing to Maya and he had threatened to kill the girls' brother if they told anyone.

¶6        In November or December 2010, Maya reported the molestation to a counselor at her school. Buccheri-Bianca subsequently was indicted on nine counts of

3

child molestation involving Maya, Celina, Kendall, and Kyle. He was convicted of five counts involving Maya, Celina, and Kendall, and was sentenced as described above. We have jurisdiction over his appeal pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## Discussion

### Evidence of Victims' Immigration Status

¶7 Buccheri-Bianca first argues the trial court erred in granting the state's motion to preclude evidence that Maya had applied for a "U-Visa," a type of visa providing temporary authorization—that is, admission to the United States with nonimmigrant status—for a noncitizen who is a victim of, and assists in the prosecution of, certain crimes. *See* 8 U.S.C. §§ 1101(a)(15)(U), 1184(p); 8 C.F.R. § 214.14(a)(9), (b).[3] Buccheri-Bianca contends that evidence of the visa application was important to his defense because the possibility of obtaining authorized status would give Maya and her family, if unauthorized, "a substantial motive to fabricate or exaggerate any allegations." The trial court disagreed and precluded "any mention . . . of the immigration status of the alleged victim, her siblings, [or] her parents [as] simply not relevant." We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *State v. McGill*, 213 Ariz. 147, ¶ 30, 140 P.3d 930, 937 (2006).

---

[3]Parents and siblings of the victim are also eligible to obtain U-Visas under the victim's application. § 1101(a)(15)(U)(ii)(I). Although the U-Visa provides only a temporary authorization, the Secretary of Homeland Security may confer permanent-resident status on an alien who has held a U-Visa for three years. 8 U.S.C. § 1255(m)(1); *see also Catholic Charities CYO v. Chertoff*, 622 F. Supp. 2d 865, 871 (N.D. Cal. 2008).

4

¶8        Trial courts retain wide latitude to impose reasonable limits on cross-examination to prevent confusion of the issues or interrogation that is only marginally relevant. *State v. Cañez*, 202 Ariz. 133, ¶ 62, 42 P.3d 564, 584 (2002); *see also State v. Fleming*, 117 Ariz. 122, 125, 571 P.2d 268, 271 (1977) ("The right to cross-examination must be kept within 'reasonable' bounds and the trial court has discretion to curtail its scope."). This latitude includes the discretion to preclude evidence of immigration status if it is "collateral to the issues at trial and would potentially confuse the jury." *State v. Abdi*, 226 Ariz. 361, ¶ 23, 248 P.3d 209, 215 (App. 2011).

¶9        The trial court did not abuse its discretion in excluding evidence of the victims' immigration status. As the state points out, nothing in the record shows that Maya or her family members "knew about U-Visas" when Maya reported the molestation to her teacher. And Maya did not obtain support from the state for her visa application until November 2011—nearly a year after she made her initial allegations in late 2010.[4] Although an alien cannot be eligible for a U-Visa unless the underlying crime has first been reported, § 214.14(c)(2)(i), the great length of time between when Maya first reported the molestation and the time she filed her application supports the court's conclusion that the possibility of obtaining a U-Visa was not relevant to her accusation.

¶10        Furthermore, the record does not contain evidence that Maya or any member of her family had unauthorized status. Although a U-Visa may provide relief from removal for an unauthorized alien, §§ 1101(a)(15)(U) and 1184(p) do not require

---

[4]On November 4, 2011, a deputy county attorney signed Supplement B to Maya's I-918 application for the U-Visa.

5

that an alien be unauthorized in order to apply. And, even if the victims in this case were unauthorized and such evidence did have some probative value, the trial court could implicitly conclude, as argued by the state, that any probative value would have been outweighed by the risk of unfair prejudice and confusion of the issues stemming from a collateral mini-trial on the victims' immigration status. *See* Ariz. R. Evid. 403. We find no abuse of discretion.

¶11 We also disagree with Buccheri-Bianca's claim that the limitation on cross-examination violated his constitutional right to confrontation and to present a theory of defense. *See generally* U.S. Const. amend. VI; *Crawford v. Washington*, 541 U.S. 36 (2004). Because he did not make these constitutional arguments in the trial court, we review them for fundamental error. *See State v. Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d 601, 607 (2005). The rights asserted are "limited to evidence which is relevant and not unduly prejudicial," *State v. Oliver*, 158 Ariz. 22, 30, 760 P.2d 1071, 1079 (1988), and, as discussed above, evidence of the victims' immigration status was properly excluded. Buccheri-Bianca's constitutional rights therefore were not violated. *See State v. Davis*, 205 Ariz. 174, ¶ 33, 68 P.3d 127, 132 (App. 2002).

**Prosecutorial Misconduct**

¶12 Buccheri-Bianca next argues the prosecutor committed misconduct during his closing argument by asserting repeatedly that the victims lacked a motive to lie. He maintains the victims did have a motive to lie—namely the immigration relief the family supposedly stood to gain by assisting law-enforcement officials in his prosecution—and that the prosecutor unfairly took advantage of the exclusion of that evidence in order to

6

argue the victims lacked any motive to falsify. Because Buccheri-Bianca did not raise this issue below, we review for fundamental error. Under that standard the burden is on an appellant to prove that error exists and that it is fundamental and prejudicial. *See Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d at 607.

¶13 To prevail on a claim of prosecutorial misconduct, a defendant must establish that "'(1) misconduct is indeed present[,] and (2) a reasonable likelihood exists that the misconduct could have affected the jury's verdict, thereby denying defendant a fair trial.'" *State v. Anderson*, 210 Ariz. 327, ¶ 45, 111 P.3d 369, 382-83 (2005), *quoting State v. Atwood*, 171 Ariz. 576, 606, 832 P.2d 593, 623 (1992).

¶14 In his closing argument, the prosecutor asked the jury,

> Now, ladies and gentlemen, I also want to talk to you about motive, because really that's one of the absolute keys in this case, motives.
>
> When it comes down to it there is none for these kids. Think about the experiences these children are relating to you. What motive would they have to make them up against this man?

The prosecutor also asked, "What do these kids have to gain or lose by telling this story?" and stated, "They have no motive to make this up." In his rebuttal, the prosecutor continued along the same lines, telling the jury that "if there was a plain motive for these kids to make [the allegations] up you'd have heard about it.

¶15 As discussed above, the trial court properly excluded evidence of Maya's U-Visa application after finding that the possibility of immigration relief did not motivate the accusations in this case. Thus, when the prosecutor pointed out there was no

7

evidence of a motive to fabricate or exaggerate the accusations, he was merely arguing a reasonable inference drawn from the evidence presented to the jury. Counsel may "comment on the evidence and argue all reasonable inferences therefrom." *State v. Hill*, 174 Ariz. 313, 322, 848 P.2d 1375, 1384 (1993). We accordingly find no fundamental error.

**Amendment of Indictment During Trial**

**¶16** Buccheri-Bianca next argues the trial court erred in allowing the state to amend the counts of the indictment that related to the molestation of Celina, after she had testified, to conform to her testimony. We review for an abuse of discretion a court's decision to permit the amendment of an indictment. *State v. Johnson*, 198 Ariz. 245, ¶ 4, 8 P.3d 1159, 1161 (App. 2000).

**¶17** Rule 13.5(b), Ariz. R. Crim. P., permits an indictment to be "amended only to correct mistakes of fact or remedy formal or technical defects, unless the defendant consents to the amendment." An indictment is deemed to be automatically amended "to conform to the evidence adduced at any court proceeding." *Id.* A defect is formal or technical when its amendment does not change the nature of the offense or otherwise prejudice the defendant. *State v. Bruce*, 125 Ariz. 421, 423, 610 P.2d 55, 57 (1980). An amendment that alters the elements of the charged offense, however, is not authorized under Rule 13.5(b). *State v. Freeny*, 223 Ariz. 110, ¶¶ 17, 20, 219 P.3d 1039, 1042 (2009).

**¶18** Count One of the original indictment alleged that Buccheri-Bianca had committed child molestation by "intentionally or knowingly engaging in sexual contact

8

with [Celina], a child under fifteen years of age, involving the genitals, to wit: touching genitals skin to skin in the kitchen." Count Two alleged the same offense involving the same conduct and victim, but alleged that the conduct had occurred "in the bedroom." At trial, however, Celina did not testify as to any conduct that had occurred in the kitchen or the bedroom, but, as the trial court noted, "made it sound like it was all in the living room." In fact, Celina denied that any sexual contact had taken place in the bedroom. After Celina's testimony, the state moved to amend the indictment to delete the locations listed in Counts One and Two. The court granted the motion and amended Count One to allege child molestation "on one occasion" and Count Two to allege the same offense "on a second occasion."[5] The court noted additionally, however, that but for its permitting the amendments, it "would probably have granted" Buccheri-Bianca's eventual motion for a judgment of acquittal pursuant to Rule 20, Ariz. R. Crim. P.

¶19 We agree with the state that the amendment did not change the nature of the offense. Because the offense of child molestation does not include an element of location, *see* A.R.S. § 13-1410(A), changing the location where the conduct was alleged to have occurred did not change the elements necessary to prove the crime and therefore did not change the nature of the offense. *See Bruce*, 125 Ariz. at 423, 610 P.2d at 57. Instead, under Rule 13.5(b), Ariz. R. Crim. P., both counts were "deemed amended" to

---

[5]More specifically, Count One as amended alleged that Buccheri-Bianca had committed molestation of a child by "touching genitals skin to skin on one occasion," and amended Count Two alleged he had committed the same offense against the same victim by "touching genitals skin to skin on a second occasion."

9

conform to Celina's testimony about the precise room in which the molestation had taken place.

¶20    Buccheri-Bianca contends he was prejudiced by the amendment because he had based his defense on the inconsistencies and vagueness of the victims' testimony, and amending the indictment deprived him of an opportunity to point out the inconsistency between Celina's original statement, which had formed the basis of the indictment, and her testimony at trial. Buccheri-Bianca also points to the trial court's statement that it would have granted his acquittal motion had the indictment not been amended, as demonstrating prejudice.

¶21    We conclude the amendments did not prejudice Buccheri-Bianca. First, after Celina testified that all of the instances in which Buccheri-Bianca had touched her occurred in the living room, contrary to the indictment's allegation they had occurred in the bedroom and the kitchen, Buccheri-Bianca's counsel had the opportunity to cross-examine her about what she originally had told investigators. Counsel pointed out areas where Celina's memory of events was weak, as well as various inconsistencies between her trial testimony and her earlier forensic interview. He also asked whether the incidents had occurred "in the room with the TV." Although counsel did not ask Celina whether she had reported earlier that the molestation incidents had occurred in the bedroom and kitchen, rather than the living room as she testified at trial, he had ample opportunity to do so.

¶22    Furthermore, during closing arguments, Buccheri-Bianca's counsel argued the state had failed to meet its burden of proof. When discussing "all of the

10

inconsistencies in the [victims'] stories, both big and small," he called the jury's attention to the amendments to the indictment and argued that the purpose of the amendments was "to fit with what the story is this time" and to cover "a giant hole . . . that things were going to fall through." Because Buccheri-Bianca was not deprived of an opportunity to present the inconsistencies between Celina's trial testimony and her reported statements underlying the charges in the indictment, and because he was permitted to point out the amendment to the jury and to argue that it demonstrated a major change in Celina's story, we find no prejudice arising from the amendment.

¶23         Nor do we find the trial court's comment that it probably would have granted a Rule 20 motion absent the amendment demonstrative of prejudice because we disagree that Buccheri-Bianca would have been entitled to a judgment of acquittal. Based on our review of the record, we find no basis to grant a Rule 20 motion. *See State v. West*, 226 Ariz. 559, ¶¶ 14-15, 250 P.3d 1188, 1191 (2011).

¶24         In evaluating a trial court's ruling on a Rule 20 motion, "'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* ¶ 16, *quoting State v. Mathers*, 165 Ariz. 64, 66, 796 P.2d 866, 868 (1990). To survive such a motion with respect to Counts One and Two, the state was required to present evidence that Buccheri-Bianca "intentionally or knowingly engag[ed] in or caus[ed] a person to engage in sexual contact . . . with a child who is under fifteen years of age." § 13-1410(A). Importantly, as noted earlier, the elements of the offense do not include the location of the acts. Celina testified that a man

11

named "Pablo" had touched her vagina on two occasions, which satisfies the element of sexual contact. *See* A.R.S. § 13-1401(2) ("'Sexual contact' means any direct or indirect touching . . . of any part of the genitals . . . ."). She also testified that he "sat us down" and then "got his hand and then he put it inside . . . [m]y pants," which is sufficient evidence of intent or knowledge. Celina testified additionally that she had been under the age of fifteen when the touching had occurred. Finally, although Celina did not personally identify Buccheri-Bianca as the person who molested her, she testified that these instances of contact had always occurred in the presence of her sister, Maya, and Maya identified Buccheri-Bianca as Pablo.

¶25         This evidence was sufficient to survive a Rule 20 motion. Although the discrepancy about the location of the incidents justified Buccheri-Bianca's argument about reasonable doubt, it does not warrant a finding of insufficient evidence. Accordingly, even had the trial court erroneously granted Buccheri-Bianca's Rule 20 motion, the state could have obtained relief on appeal from that ruling, *see* A.R.S. § 13-4032(7), for the reasons described above. We therefore find no prejudice and conclude that the court properly permitted the amendment.

**Denial of Motion to Preclude State's Expert**

¶26         Buccheri-Bianca next argues the trial court erroneously denied his motion to preclude testimony from the state's expert witness, Wendy Dutton. He asserts Dutton's testimony was inadmissible because the basis of her expertise was rooted in "novel scientific theor[ies]" and therefore was unreliable, the testimony was not helpful to the trier of fact, and it impermissibly bolstered the credibility of the victims. We

12

review a trial court's rulings on the admission of expert testimony for an abuse of discretion. *State v. Wright*, 214 Ariz. 540, ¶ 5, 155 P.3d 1064, 1066 (App. 2007).

¶27        The admissibility of expert testimony is governed by Rule 702, Ariz. R. Evid., which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)    the testimony is based on sufficient facts or data;
>
> (c)    the testimony is the product of reliable principles and methods; and
>
> (d)    the expert has reliably applied the principles and methods to the facts of the case.

Rule 702 incorporates the admissibility standards announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and is identical to its federal counterpart. *See* Ariz. R. Evid. 702 cmt.; *see also* Fed. R. Evid. 702.  As we we noted in *State v. Salazar-Mercado*, 232 Ariz. 256, ¶ 14, n.5, 304 P.3d 543, 548, n.5 (App. 2013), the amended rule does not prohibit generalized expert testimony simply on the basis that it is not rooted in the facts of the case, and thus does not effect a "sea change" in Arizona's well-established framework for evaluating the admissibility of generalized expert testimony.  *See* Ariz. R. Evid. 702 cmt. (amendment "not intended to supplant traditional jury determinations of credibility" or "preclude the testimony of experience-based experts"); *see also State v. Moran*, 151 Ariz. 378, 385, 728 P.2d 248, 255 (1986)

13

(permitting generalized expert testimony about behavioral characteristics of sex-abuse victims); *State v. Lindsey*, 149 Ariz. 472, 474-75, 720 P.2d 73, 75-76 (1986) (generalized expert testimony about behavioral patterns common among child victims allowed so long as not commenting on accuracy, reliability, or credibility of particular witness); *State v. Chapple*, 135 Ariz. 281, 292-93, 660 P.2d 1208, 1219-20 (1983) (trial court erroneously precluded generalized expert testimony about factors that affect reliability of eyewitness identification). Although generalized testimony still may be precluded if it otherwise fails to satisfy Rule 702 or the other applicable rules of evidence, we disagree with Buccheri-Bianca that the trial court abused its discretion in admitting Dutton's testimony in this case.

¶28 Buccheri-Bianca suggests that Dutton's testimony was unreliable because her methods were nonscientific. He contends "there are no scientific methods to determine whether a child who alleges abuse is lying or telling the truth, and there is no scientific data regarding the presence or absence of symptoms which indicate abuse has occurred." He maintains, therefore, that Dutton's opinion could not "be verified and reproduced by other similarly situated experts in the field." We rejected this argument, however, in *Salazar-Mercado*, concluding that Rule 702 is "'not intended to prevent expert testimony based on experience.'" 663 Ariz. Adv. Rep. 4, ¶ 18, *quoting McMurtry v. Weatherford Hotel, Inc.*, 231 Ariz. 244, ¶ 17, 293 P.3d 520, 527 (App. 2013). We observed that *Daubert*, which announced the standards that formed the basis of Rule 702, "does not require a court to evaluate all expert testimony for 'known or potential rate[s] of error'" but that "factor should be relied upon only to the extent it is relevant." *Id.*,

14

*quoting Daubert*, 509 U.S. at 594 (alteration in *Salazar-Mercado*); *see also Shuck v. CNH Am., LLC*, 498 F.3d 868, 874 (8th Cir. 2007) (rate of error "need not be considered in every case").  Accordingly, because Dutton's testimony was based on her experience, it was not inadmissible simply because it was not accompanied by a determination of the rate of error.

¶29          Next, relying on several decisions of federal appellate courts, Buccheri-Bianca asserts that Dutton's testimony could not assist the jury because "the subject matter is already within the understanding of the average lay juror."  To be admissible, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue."  Ariz. R. Evid. 702(a).  Our supreme court has held that courts "cannot assume that the average juror is familiar with the behavioral characteristics of victims of child molesting."  *Lindsey*, 149 Ariz. at 473-74, 720 P.2d at 74-75.  The court also recognized that "[k]nowledge of such characteristics may well aid the jury in weighing the testimony of the alleged child victim."  *Id.* at 474, 720 P.2d at 75.  Thus, we have held that experts may testify about the general characteristics and behavior of victims of child molestation as long as "the proffered testimony assists the jury 'by providing it with relevant information, necessary to a reasoned decision of the case.'"  *Salazar-Mercado*, 663 Ariz. Adv. Rep. 4, ¶ 14 & n.5, *quoting Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 595 (D.N.J. 2002).  Dutton testified about various reasons victims may delay disclosing molestation and different manners in which they may make the disclosure.  This testimony reasonably could enable jurors to avoid mistaking benign behavior, which "may [have been] merely the result of immaturity, psychological stress,

15

societal pressures or similar factors," for inaccurate reporting or prevarication. *Lindsey*, 149 Ariz. at 473-74, 720 P.2d at 74-75. We therefore agree with the trial court that because the evidence was helpful to the jury, it was not inadmissible on this basis.

¶30 Finally, Buccheri-Bianca argues Dutton's testimony was "problematic" because it "basically offered a premise that children do not lie about child molestation, or if they do, it happens [o]n rare occasions and in limited circumstances not present in this case." Although Buccheri-Bianca is correct that an expert witness cannot be used to usurp the jury's fact finding function, *see Lindsey*, 149 Ariz. at 474, 720 P.2d at 75, Dutton's testimony in this case was sufficiently general to avoid running afoul of our supreme court's holding in *Lindsey*. Dutton testified that in her experience, "malicious false allegations" typically are made by "younger children whose parents are involved in a high-conflict divorce or custody dispute" or "teenage girls" who may use the allegation to seek some secondary gain. She did not state that any of the victims in this case should be believed or disbelieved; rather, she testified generally about factors that may prompt a child to falsely report molestation. Accordingly, Buccheri-Bianca has not established that the trial court abused its discretion in admitting Dutton's testimony.

**Recorded Jail Conversations**

¶31 Buccheri-Bianca next challenges the trial court's ruling on the admissibility of statements he had made in a recorded conversation with a social worker while incarcerated before trial. Although he professed his innocence throughout the conversation, at one point he stated, "I'm guilty," twice in succession. Buccheri-Bianca moved to exclude the statements or, alternatively, to admit the entire conversation. The

16

court admitted the inculpatory statements but also allowed Buccheri-Bianca to introduce several other statements during the interview in which he expressly denied his guilt. It did not admit the entire conversation. On appeal, Buccheri-Bianca argues the court erred in admitting the inculpatory statements, or, in the alternative, erred by not admitting the entire conversation. We review evidentiary rulings for an abuse of discretion. *State v. Amaya-Ruiz*, 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990).

*Admissibility of Inculpatory Statements*

**¶32** Buccheri-Bianca contends that his statements during the course of the entire interview are "indicative of mental incompetence," and therefore his repeated statement, "I'm guilty," lacks relevance under Rule 401, Ariz. R. Evid. He suggests that even if the statement had some probative value in isolation, that value was substantially outweighed by the statement's prejudicial effect. *See* Ariz. R. Evid. 403. Although Buccheri-Bianca objected to the admission of the statements, he did not make this argument below; we therefore review for fundamental error. *See Henderson*, 210 Ariz. 561, ¶ 19, 115 P.3d at 607.

**¶33** Buccheri-Bianca's declaration, "I'm guilty," was made in response to the statement "you're innocent until proven guilty" and, though made while Buccheri-Bianca may have been in a confused state, we cannot say the trial court could not reasonably find the declaration relevant to the charges at issue, as required by Rules 401 and 402, Ariz. R. Evid. And we find no abuse of discretion in the trial court's implicit determination that the probative value of such a facially significant admission was not outweighed by the danger of unfair prejudice, *see* Ariz. R. Evid. 403. For these reasons, and because the

17

state offered Buccheri-Bianca's own statement against him, the declaration was properly admitted as a statement by a party opponent. *See* Ariz. R. Evid. 801(d)(2). Accordingly, we find no fundamental error.

*Admissibility of Entire Conversation under Rule of Completeness*

¶34 Buccheri-Bianca argues, in the alternative, that if the trial court did not err in admitting the statements "I'm guilty," then it erred by failing to admit the entire conversation under Rule 106, Ariz. R. Evid., because "it would have shown the jury how confused [he] was" at the time he made the inculpatory statement. Under Rule 106, "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." But the rule does not necessarily require the admission of the entire account; instead "only the portion of a statement 'necessary to qualify, explain or place into context the portion already introduced' need be admitted." *State v. Cruz*, 218 Ariz. 149, ¶ 58, 181 P.3d 196, 209 (2008), *quoting State v. Prasertphong*, 210 Ariz. 496, ¶ 15, 114 P.3d 828, 831 (2005).

¶35 The trial court did not err by declining to admit Buccheri-Bianca's entire prison interview into evidence. The court permitted him to introduce multiple exculpatory statements from the same dialogue. And many of his statements that were not admitted involved inflammatory remarks about the victims' and their family's immigration status, a topic about which the court properly excluded other evidence as discussed above. Because the exculpatory portions of Buccheri-Bianca's statements were admitted and because other portions of the interview contained pejorative remarks that

18

were unnecessary to provide context, we find no abuse of discretion in the trial court's refusal to admit the entire conversation.

**Sufficiency of Evidence**

¶36 Finally, Buccheri-Bianca argues that the evidence was insufficient to sustain his convictions. "This question of sufficiency of the evidence is one of law, subject to de novo review on appeal." *West*, 226 Ariz. 559, ¶ 15, 250 P.3d at 1191. "'[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Id.* ¶ 16, *quoting Mathers*, 165 Ariz. at 66, 796 P.2d at 868. Thus, "[w]hen reasonable minds may differ on inferences drawn from the facts, the case must be submitted to the jury, and the trial judge has no discretion to enter a judgment of acquittal." *State v. Lee*, 189 Ariz. 590, 603, 944 P.2d 1204, 1217 (1997).

¶37 To sustain Buccheri-Bianca's conviction for molestation of a child, the record must reflect, with respect to each of the victims, substantial evidence that he "intentionally or knowingly engag[ed] in or caus[ed] a person to engage in sexual contact, except sexual contact with the female breast, with a child who is under fifteen years of age." § 13-1410(A). For purposes of the child-molestation statute, sexual contact includes "any direct or indirect touching, fondling or manipulating of any part of the genitals [or] anus . . . by any part of the body or by any object." § 13-1401(2).

¶38 Buccheri-Bianca does not argue the state failed to present evidence of the elements listed above but rather contends the victims' testimony was "grossly

19

inconsistent and grossly vague," suggesting the jury should not have believed them. But "'[n]o rule is better established than that the credibility of the witnesses and the weight and value to be given to their testimony are questions exclusively for the jury.'" *State v. Cox*, 217 Ariz. 353, ¶ 27, 174 P.3d 265, 269 (2007), *quoting State v. Clemons*, 110 Ariz. 555, 556-57, 521 P.2d 987, 988-89 (1974). It is not the province of an appellate court to reweigh evidence or reassess the witnesses' credibility. *Lee*, 189 Ariz. at 603, 944 P.2d at 1217; *State v. Cid*, 181 Ariz. 496, 500, 892 P.2d 216, 220 (App. 1995). Rather, we view the facts in the light most favorable to upholding the determination of the jury. *State v. Miranda-Cabrera*, 209 Ariz. 220, 221-22, 99 P.3d 35, 36-37 (App. 2004).

¶39    Buccheri-Bianca points out various inconsistencies in the children's testimony and the physical evidence collected at the scene. For example, he notes that Maya testified he had produced gifts for her and Celina from a blue gift bag in his closet but police found only a green and white bag in his closet. Buccheri-Bianca also points out that Maya and Kendall claimed Buccheri-Bianca would don gloves before touching them, yet police found no gloves in his apartment. He also highlights Kendall's testimony that Buccheri-Bianca had tied him up with either thin, brown string or thick, brown rope, yet police found only white kitchen twine in the apartment. These inconsistencies, however, were matters for the jury's consideration in making its credibility determinations and weighing the evidence. *See Cox*, 217 Ariz. 353, ¶ 27, 174 P.3d at 269.

¶40    We conclude that the evidence presented was sufficient to survive a Rule 20 motion. All of the victims explained how Buccheri-Bianca had used his hands to

20

touch or rub their genitals while they were in his apartment. All three children testified consistently that Buccheri-Bianca had given them candy and other gifts, had separated them by gender when he molested them, and had threatened to kill their family if they reported him.[6] Additionally, two forensic interviewers testified they had observed no evidence of "source monitoring," that is, no indication that the children's accusations were coached by someone else. We conclude the state presented substantial evidence of Buccheri-Bianca's guilt and the case was presented properly to the jury. The trial court therefore did not err in denying Buccheri-Bianca's motion for a judgment of acquittal.

**Criminal Restitution Order**

Although Buccheri-Bianca has not raised the issue on appeal, we find the CRO entered at sentencing constitutes fundamental error because it reduces "all fines, fees, assessments and/or restitution" to a CRO "with no interest, penalties or collection fees to accrue while the defendant is in the Department of Corrections." Entry of such a CRO before a defendant's sentence has expired was not authorized by A.R.S. § 13-805, and "'constitutes an illegal sentence, which is necessarily fundamental, reversible error.'"[7] *State v. Lopez*, 231 Ariz. 561, ¶ 2, 298 P.3d 909, 910 (App. 2013), *quoting State v. Lewandowski*, 220 Ariz. 531, ¶ 15, 207 P.3d 784, 789 (App. 2009).

---

[6]Although Buccheri-Bianca testified he was innocent, it was within the jury's purview whether to believe his testimony. *Clemons*, 110 Ariz. at 557, 521 P.2d at 989.

[7]A.R.S. § 13-805 has since been amended. *See* 2012 Ariz. Sess. Law, ch. 269, § 1.

21

**Disposition**

¶41      For the foregoing reasons, the CRO is vacated; Buccheri-Bianca's convictions and sentences are otherwise affirmed.


/s/ *Philip G. Espinosa*

PHILIP G. ESPINOSA, Judge


CONCURRING:


/s/ *Virginia C. Kelly*

VIRGINIA C. KELLY, Presiding Judge


/s/ *Peter J. Eckerstrom*

PETER J. ECKERSTROM, Judge