NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MATTHEW PATRICK CURL, *Appellant.*

No. 1 CA-CR 18-0080
FILED 10-23-2018

Appeal from the Superior Court in Yavapai County
No. P1300CR201700226
The Honorable Tina R. Ainley, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

### MEMORANDUM DECISION

Acting Presiding Judge Maria Elena Cruz delivered the decision of the Court, in which Judge Randall M. Howe and Chief Judge Samuel A. Thumma joined.

**C R U Z**, Judge:

**¶1**         Matthew Patrick Curl appeals his convictions and sentences for aggravated assault, disorderly conduct, and disorderly conduct with a deadly weapon.  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY[1]

**¶2**         On the afternoon of February 11, 2017, B.N. visited T.S. and his girlfriend, J.G., at their apartment.  Before long, Curl and his girlfriend, B.B., arrived, uninvited.  Angry about an ongoing financial dispute, Curl began arguing with B.N. and brandished a gun.  Upon seeing the weapon, J.G. immediately ran into the bedroom.  B.N. responded, "I don't give a [expletive], shoot me," but then he too ran into the bedroom.  Giving chase, Curl reached the doorway, and again threatened B.N. with the gun.

**¶3**         J.G. pushed past Curl.  While crossing the doorway threshold, she heard a gunshot behind her and fled from the apartment with T.S.  Curl, B.B., and B.N. also ran from the apartment, with B.N. grabbing the back of Curl's truck as it sped away.

**¶4**         Meanwhile, across the street, a neighbor heard the gunshot, saw five people flee from the apartment, and called 9-1-1.  By the time responding police officers arrived at the scene a few minutes later, T.S., J.G., and B.N. had returned to the apartment.  Using a patrol vehicle's public announcement system, the officers ordered all occupants out of the apartment, and T.S., J.G., and B.N. emerged. While officers then spoke with the trio, they noted that J.G. appeared quite frightened and B.N., who had numerous injuries to his arms, legs, and back, seemed nervous.

---

[1]     We view the facts in the light most favorable to sustaining the verdicts.  *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

**¶5**　　While conducting a sweep of the apartment, police officers found a spent shell casing on the floor and a corresponding bullet in the ceiling.

**¶6**　　Having identified Curl as a suspect through their conversations with T.S., J.G., and B.N., officers drove to Curl's house. There, officers conducted a cursory search of the home, including Curl's locked bedroom. They then spoke with Curl's parents, who said they could not account for a nine-millimeter handgun missing from their gun safe. While officers questioned his parents, Curl called home and spoke with an officer who eventually persuaded him to peacefully surrender.

**¶7**　　Later that evening, after Curl was taken into custody, officers executed a search warrant on T.S. and J.G.'s apartment and recovered a nine-millimeter bullet from the ceiling. Pursuant to a separate warrant, officers also searched Curl's residence, and found a nine-millimeter bullet under his bed.

**¶8**　　The State charged Curl with one count of discharge of a firearm at a structure (Count 1), one count of aggravated assault (Count 2 – victim B.N.), three counts of disorderly conduct with a deadly weapon (Count 3 – victim J.G.; Count 4 – victim T.S.; Count 5 – victim G.K.), and one count of unlawful discharge of a firearm (Count 6). The State also alleged aggravating circumstances and that Curl had multiple prior felony convictions.

**¶9**　　After a four-day trial, a jury acquitted Curl of Counts 1 and 6 and convicted him of the remaining charges, though finding him guilty only of the lesser-included offense of disorderly conduct as to Count 5. The superior court sentenced Curl to a mitigated term of 15 years' imprisonment on Count 2; concurrent, mitigated terms of 4.5 years' imprisonment on Counts 3 and 4, and credit for time served on Count 5. Curl timely appealed, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A)(1).

## DISCUSSION

I.　　Sufficiency of the Evidence – Denial of Motion for Judgment of Acquittal

**¶10**　　Arguing insufficient evidence supports his convictions for aggravated assault and disorderly conduct with a deadly weapon, Curl

3

contends the superior court erroneously denied his motion for judgment of acquittal.

**¶11** After the State rested, Curl moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure ("Rule") 20, claiming no evidence supported one or more essential elements of each of the six charges. Finding that J.G.'s recorded police interview provided substantial evidence of the charged offenses, and "it's credibility, but I don't make those calls," the superior court denied the motion.

**¶12** We review *de novo* a superior court's ruling on a Rule 20 motion. *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011). For such a motion to properly be granted, there must be "no substantial evidence to support a conviction." Ariz. R. Crim. P. 20(a)(1). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *West*, 226 Ariz. at 562, ¶ 16 (internal quotation omitted). In reviewing the sufficiency of the evidence, we test the evidence "against the statutorily required elements of the offense," *State v. Pena*, 209 Ariz. 503, 505, ¶ 8 (App. 2005), and neither reweigh conflicting evidence nor assess the credibility of witnesses. *See State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013). Substantial evidence upon which a reasonable jury can convict may be direct or circumstantial, *West*, 226 Ariz. at 562, ¶ 16, and a judgment of acquittal is appropriate only when "there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a)(1).

**¶13** A person commits aggravated assault when using a deadly weapon or dangerous instrument to intentionally place another person in reasonable apprehension of imminent physical injury. A.R.S. §§ 13-1203(A)(2), -1204(A)(2). Curl argues the State failed to present any evidence that he placed B.N. in apprehension of imminent physical injury because B.N. did not testify. Indeed, Curl contends B.N.'s statement, "I don't give a [expletive], shoot me," in response to Curl brandishing a weapon, demonstrates that B.N. "was not scared at all." In the same vein, Curl asserts B.N.'s attempt to chase after him as he fled also proves that B.N. was not afraid.

**¶14** Notwithstanding B.N.'s initial bravado, the record reflects that he ran from Curl and attempted to barricade himself in a bedroom to escape. B.N.'s response to Curl's threats reflects that he feared harm or anticipated he might be harmed. *See State v. Garza*, 196 Ariz. 210, 211, ¶ 4 (App. 1999) (explaining a victim need not testify "that she had been placed in reasonable apprehension of imminent physical injury, as long as that fact

[i]s established by other evidence."). Moreover, contrary to Curl's contention, B.N.'s attempt to chase after Curl once he no longer posed an immediate threat does not negate the evidence that B.N. feared being shot while Curl pointed a gun at him. Viewing the record in its entirety, substantial evidence existed from which a reasonable jury could find that Curl used a handgun to intentionally place B.N. in reasonable apprehension of imminent physical injury.

¶15 Turning to the disorderly conduct with a deadly weapon counts, Curl contends the State failed to present any evidence that he disturbed J.G.'s or T.S.'s peace. As charged in this case, a person commits disorderly conduct with a deadly weapon if, with intent to disturb the peace or quiet of a neighborhood, family or person, or with knowledge of doing so, such person recklessly handles, displays or discharges a deadly weapon. A.R.S. § 13-2904(A)(6).

¶16 Here, the record reflects that Curl arrived at T.S. and J.G.'s apartment uninvited, began arguing with their guest, brandished a weapon, threatened their guest with the weapon, followed J.G. and the guest into a bedroom after they tried to escape, and fired a bullet into the apartment ceiling. In response to Curl's conduct, T.S. and J.G. fled from their home. Substantial evidence existed from which a reasonable jury could find that Curl intended to disturb T.S. and J.G.'s peace when he brandished a firearm in their home. Therefore, the superior court did not err when it denied Curl's motion for judgment of acquittal as to the disorderly conduct charges.

II.     Admission of T.S.'s Statement

¶17 Curl argues the superior court improperly permitted a sergeant to testify that T.S. identified Curl as the shooter.

¶18 Although T.S. did not testify at trial, without objection, the prosecutor asked an investigating sergeant whether T.S. had identified the shooter for police officers, and the witness responded yes. The prosecutor then asked "[w]ho did he say it was?," and defense counsel objected on hearsay grounds. Without hearing from the prosecutor, the superior court found the testimony went "to notice," overruled the objection, and the sergeant testified that T.S. had identified "Pork Chop" (Curl's nickname) as the shooter.

¶19 We generally review a superior court's evidentiary rulings for an abuse of discretion. *State v. Ellison*, 213 Ariz. 116, 129, ¶ 42 (2006). We

review *de novo*, however, evidentiary rulings implicating the Confrontation Clause. *Id.*

¶20 Out-of-court statements offered to prove the truth of the matter asserted are generally inadmissible absent an exception to the rule against hearsay. Ariz. R. Evid. 801(c), 802. Testimonial hearsay, which includes statements given in response to formal police questioning, is also barred by the Confrontation Clause when the declarant does not appear at trial, unless the declarant is unavailable, and the defendant had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 59 (2004).

¶21 In this case, the sergeant's trial testimony directly recounted T.S.'s out-of-court statement to police that Curl was the shooter. Consistent with the superior court's ruling, the State argues the prosecutor did not elicit evidence of T.S.'s statement for its truth, but for "notice" or "to establish a basis for the subsequent actions undertaken by" the sergeant. But the record does not support that argument, the transcript does not support that argument and no limiting instruction was given on the point, as would have been proper if, indeed, it was admissible for "notice" or any other proper purpose independent of its truth. The record reflects, however, that an officer had testified earlier without objection that Curl had been identified as a suspect or person of interest early in the investigation. Therefore, the State's assertion that T.S.'s identification of Curl as "the shooter" provided necessary context for the focus of the investigation is unfounded. And the State has shown no permissible non-hearsay purpose for the testimony to be received on this record.

¶22 Because there is no basis on this record to conclude that T.S. was unavailable to testify, the evidence regarding his out-of-court identification was testimonial hearsay admitted in violation of Curl's Confrontation Clause rights. A Confrontation Clause violation, however, is subject to harmless error review. *State v. Parks*, 211 Ariz. 19, 31, ¶ 54 (App. 2005). Error is harmless if we can conclude beyond a reasonable doubt that it did not contribute to or affect the verdict. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 18 (2005). To assess whether a Confrontation Clause violation is harmless, we consider several factors, including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986).

¶23        Applying this standard here, the erroneous admission of T.S.'s out-of-court identification was harmless. Although the testimonial statement provided the only direct evidence that Curl fired the shot into the apartment ceiling, his discharge of the weapon was an essential element only for Counts 1 and 6, and he was acquitted of those charges. For the counts of aggravated assault and disorderly conduct, the State needed only to prove that Curl brandished a firearm in a threatening manner, and J.G.'s recorded police interview provided the primary evidence for those offenses. Importantly, J.G.'s account was also corroborated by the nine-millimeter handgun missing from Curl's residence and the nine-millimeter bullets recovered from the apartment ceiling and Curl's bedroom. Given the overall strength of the State's case with respect to Counts 2-5, the superior court's erroneous admission of T.S.'s out-of-court identification was harmless beyond a reasonable doubt.

III.    Admission of Jail Video

¶24        Curl contends the superior court improperly admitted into evidence his recorded conversation with B.B., which was videotaped while he was incarcerated before trial. Specifically, Curl argues the evidence was irrelevant and unfairly prejudicial. We review evidentiary rulings for an abuse of discretion. *Ellison*, 213 Ariz. at 129, ¶ 42.

¶25        At trial, Curl timely objected to the admission of the jail video recording. After hearing from the parties, the court overruled the objection and permitted the State to play the video, in its entirety, for the jury.

¶26        Relevant evidence is admissible unless it is otherwise precluded by the federal or state constitution, an applicable statute, or rule. Ariz. R. Evid. 402. Evidence is relevant if it has "any tendency" to make a fact of consequence in determining the action "more or less probable than it would be without the evidence[.]" Ariz. R. Evid. 401. Nonetheless, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Ariz. R. Evid. 403.

¶27        Contrary to Curl's assertion that the recording is irrelevant and unfairly prejudicial because it shows him threatening to harm an unknown individual named Kyle, the record reflects that multiple witnesses identified Kyle as Curl's roommate and explained that he not only was present when police officers swept Curl's residence, but he handed the phone to officers when Curl called. More importantly, however, the video depicts Curl, in a highly agitated state, exclaiming that: (1) T.S. had "ratted [him] out," (2) the police had "the evidence," (3) only

B.B. and B.N. had "kept their mouth[s] shut," and (4) Kyle had "told on [him] too." Because these statements tend to show Curl's consciousness of guilt, the recording was both relevant and probative. *See State v. Garza*, 216 Ariz. 56, 66, ¶ 39 (2007) (concluding the defendant's statements demonstrated his consciousness of guilt, and their probative value was not substantially outweighed by any prejudice). Furthermore, although the evidence undermined Curl's defense, it did not suggest that the jury should decide the matter on an improper basis. *See State v. Mott*, 187 Ariz. 536, 545-46 (1997) (explaining "[n]ot all harmful evidence" is unfairly prejudicial, only evidence that "has an undue tendency to suggest [a] decision on an improper basis, such as emotion, sympathy, or horror."). Therefore, the superior court did not abuse its discretion by admitting into evidence the video recording.

IV.     Denial of Motion to Suppress

**¶28**       Curl argues the superior court erroneously failed to suppress the evidence seized from his bedroom. Because his door was locked, Curl contends his bedroom "was a separate residence" that police officers could not search absent a second, discrete warrant. We review the denial of a motion to suppress evidence for an abuse of discretion. *Brown v. McClennen*, 239 Ariz. 521, 524, ¶ 10 (2016).

**¶29**       On the third day of trial, a detective testified that pursuant to a warrant, he and other officers searched Curl's residence. Acknowledging that one of the bedroom doors was initially locked, the detective explained that officers nonetheless searched the room and found a nine-millimeter bullet under the bed, Curl's identification, and Curl's nickname written on the bedroom mirror. At that point in the detective's direct examination, defense counsel moved to suppress all the evidence seized from the bedroom, arguing the search warrant for Curl's residence did not expressly provide for the search of a locked bedroom. Finding the motion untimely, the superior court summarily denied it.

**¶30**       Pursuant to Rule 16.1(b), parties must file "all motions no later than 20 days before trial," and a "court may preclude any motion . . . not timely raised . . . unless the basis was not then known and could not have been known through reasonable diligence, and the party raises it promptly after the basis is known."

**¶31**       As recounted above, Curl did not move to suppress the evidence seized from his bedroom until after that evidence had been presented to the jury, just minutes before the State rested its case. When the

superior court remarked that the motion was not timely, defense counsel responded, "I realize that."

¶32        On this record, there is no basis to conclude that Curl did not timely know, or could not have known through reasonable diligence, the contents of the warrant authorizing the search of his home. Therefore, because he failed to move to suppress the challenged evidence at least twenty days before trial in accordance with Rule 16.1(b), the superior court did not abuse its discretion by denying his motion to suppress as untimely.

## CONCLUSION

¶33        For the foregoing reasons, we affirm the convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:   AA