NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA,
*Appellee*,

*v.*

BRYAN DARNELL DUNN,
*Appellant*.

No. 1 CA-CR 19-0001
FILED 11-26-2019

Appeal from the Superior Court in Maricopa County
No.  CR2017-127817-001
The Honorable Monica S. Garfinkel, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Thomas K. Baird
*Counsel for Appellant*

Bryan Darnell Dunn, Florence
*Appellant*

---

**MEMORANDUM DECISION**

---

Judge Diane M. Johnsen delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Kent E. Cattani joined.

---

**J O H N S E N**, Judge:

¶1        Bryan Darnell Dunn filed this appeal in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969), following his conviction of misconduct involving weapons, a Class 4 felony.  Dunn's counsel has searched the record on appeal and found no arguable question of law that is not frivolous. *See Smith v. Robbins*, 528 U.S. 259, 284 (2000); *Anders*, 386 U.S. at 744; *State v. Clark*, 196 Ariz. 530, 537, ¶ 30 (App. 1999).    Counsel now asks this court to search the record for fundamental error.  Dunn filed a supplemental brief raising various issues.  After reviewing the entire record, we affirm Dunn's conviction and the resulting sentence.

## FACTS AND PROCEDURAL BACKGROUND

¶2        While arresting Dunn on an unrelated matter, police twice had to direct him to raise his hands.[1] An officer then tried to restrain Dunn's hands behind his back, but Dunn resisted.  The police struggled for approximately 30 seconds to get Dunn's right hand away from his waistband, but eventually succeeded.  One officer then searched Dunn and felt a hard object in Dunn's waistband area; he asked Dunn what the object was and Dunn replied it was a gun.  The police then confiscated the gun and removed the ammunition inside it.  During a later recorded police interview, Dunn acknowledged he had prior felony convictions.

¶3        The State charged Dunn with one count of misconduct involving weapons, a Class 4 felony.  A.R.S. § 13-3102(A)(4), (M) (2019).[2] At trial, six members of the Phoenix Police Department testified and the

---

[1]        Upon review, "[w]e view the facts in the light most favorable to sustaining the jury's verdict and resolve all inferences against" Dunn. *State v. Gurrola*, 219 Ariz. 438, 439, ¶ 2, n.1 (App. 2008).

[2]        Absent material revision after the date of an alleged offense, we cite the current version of a statute or rule.

superior court admitted the confiscated gun. The court also admitted minute entries showing two prior felony convictions, Dunn's recorded police interview and documents containing fingerprints taken from Dunn during this proceeding and from records of his prior convictions. The jury found Dunn guilty, and, after the court found Dunn had at least four prior felony convictions, it sentenced him as a category-three repetitive offender to a presumptive term of 10 years in prison with 335 days of presentence incarceration credit. Dunn timely appeals. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and A.R.S. §§ 12-120.21(A)(1) (2019), 13-4031 (2019) and -4033(A)(1) (2019).

## DISCUSSION

### A. Dunn's Supplemental Brief.

¶4 In his supplemental brief, Dunn first argues two officers violated the parties' stipulation and the court's orders precluding evidence of other "suppressed" cases by implying during their testimony that Dunn was a violent criminal. Dunn points specifically to one officer's response to a question about the officer's assignment at the time of trial; the officer responded that he was "the administrative sergeant for the violent crimes bureau." When the officer next was asked about his assignment at the time of Dunn's arrest, however, he stated he was assigned to a "neighborhood enforcement team." Nothing in that exchange implied that the officer was involved in Dunn's arrest as a member of the violent-crimes bureau. Dunn also argues that the officer improperly testified that police "were investigating [him] on [an] unrelated case." Although Dunn does not cite the record for that argument, if that comment were made, it would have been consistent with a stipulation the court read to the jury that on the day Dunn was arrested, police officers "were looking for [him] to arrest him as part of an unrelated investigation."

¶5 Dunn argues another officer made two statements in violation of the court's pretrial orders. He first argues the officer described her work as a detective in the "domestic violence unit." But this testimony came in response to a request to "tell the jury a little bit about what a detective does"; the officer never referred to Dunn or this case when describing her work, there was no mention of domestic violence at any other time, no mention of a victim at any time and, after seeking the court's guidance, the prosecutor quickly moved on. Without more, the testimony did not prejudice Dunn.

¶6 Dunn further argues the officer improperly testified Dunn was transported to a violent-crime bureau after he was arrested. No error

occurred, however, because Dunn's counsel elicited the testimony and, in any event, the officer went on to testify that police took Dunn to that location only for questioning:

>[Dunn's counsel]: . . . And [Dunn] was transported to – you called the VCB 2 in your report?
>
>[Officer]: In the report.
>
>[Dunn's counsel]: What's that mean?
>
>[Officer]: VCB means violent crimes bureau. That's where people are brought. That's where the interview rooms are located at police headquarters. And each one of the rooms are numbered, so he was in room 2.

¶7            Dunn next argues a minute entry admitted as evidence of a prior conviction of an offense committed on July 29, 2014, was "false." Dunn contends he was convicted "for two 3-29-14 cases, one 10-30-14 case, and one 6-7-15 case" but "never for an [sic] 7-29-14 case." At trial, however, Dunn's counsel did not dispute the validity of any of the four convictions the State offered in evidence, and Dunn offers no explanation for his contention. Further, notwithstanding that Dunn concedes he had four prior felonies, only one felony conviction was necessary to establish that he was a prohibited possessor at the time of his arrest. Thus, no error occurred.

¶8            Dunn also argues that two witnesses provided inconsistent statements. But inconsistencies in the evidence are "for the jury's consideration in making its credibility determinations," and we will not disturb those determinations. *See State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 39 (App. 2013).

¶9            Last, Dunn argues that a witness testified at sentencing about a matter for which he was not charged. But the witness's testimony was offered to rebut Dunn's mitigation memorandum – specifically, his counsel's statements that Dunn did not have a violent history or tendencies and that Dunn had been kidnapped and assaulted on a prior occasion. Thus, this testimony was relevant and the court did not abuse its discretion by admitting it. *See State v. Burns*, 237 Ariz. 1, 28-29, ¶ 130 (2015). Further, the court did not abuse its discretion when it imposed the presumptive sentence; "[a]lthough the court could have shown greater leniency, it was not required to do so." *See State v. Todd*, 244 Ariz. 374, 382, ¶ 27 (App. 2018).

**B.      Due-Process Review.**

**¶10**      The record reflects Dunn received a fair trial.   He was represented by counsel at all stages of the proceedings against him and was present at all critical stages, except when he waived his presence at a conference during trial to discuss final jury instructions.   The court held appropriate pretrial hearings.

**¶11**      Dunn requested a voluntariness hearing, arguing the court should have suppressed his statements to police under *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Missouri v. Seibert*, 542 U.S. 600 (2004).   Because police asked Dunn what the object was in his waistband before they read him his rights, he argued his responses to the entire line of questioning should have been suppressed.  *See Seibert*, 542 U.S. at 614-17.   The superior court declined to hold a hearing on Dunn's motion because it assumed the facts in the motion were true, then properly denied the motion because the statements at issue fell within the public safety exception to *Miranda*.  *See State v. Leteve*, 237 Ariz. 516, 524, ¶ 9 (2015) ("statements made in response to 'questions necessary to secure the officers' own safety or the safety of the public' are admissible even if *Miranda* warnings have not been given" (quoting *New York v. Quarles*, 467 U.S. 649, 659 (1984))).

**¶12**      The State presented both direct and circumstantial evidence sufficient to allow the jury to convict.   The jury was properly comprised of eight members.   The court properly instructed the jury on the elements of the charges, the State's burden of proof and the necessity of a unanimous verdict.   The jury returned a unanimous verdict, which was confirmed by juror polling.   The court received and considered a presentence report, addressed its contents during the sentencing hearing and imposed a legal sentence for the crime of which Dunn was convicted.

## CONCLUSION

**¶13**      We have reviewed the entire record for an arguable issue and find none, and therefore affirm the conviction and resulting sentence.  *See Leon*, 104 Ariz. at 300.

**¶14**      Defense counsel's obligations pertaining to Dunn's representation in this appeal have ended.   Counsel need do no more than inform Dunn of the outcome of this appeal and his future options, unless, upon review, counsel finds "an issue appropriate for submission" to the Arizona Supreme Court by petition for review.  *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984).   On the court's own motion, Dunn has 30 days from

the date of this decision to proceed, if he wishes, with a *pro per* motion for reconsideration. Dunn has 30 days from the date of this decision to proceed, if he wishes, with a *pro per* petition for review.

