720 P.2d 73

**STATE of Arizona, Appellee,**

v.

**Paul Phillip LINDSEY, Jr., Appellant.**

**No. 6736–PR.**

Supreme Court of Arizona,
En Banc.

April 14, 1986.

Supplemental Opinion June 26, 1986.

Robert K. Corbin, Atty. Gen. by Galen H. Wilkes, Asst. Atty. Gen., Phoenix, for the State.

Fred Dardis, Pima Co. Public Defender by Frank P. Leto, Deputy Public Defender, Tucson, for Lindsey.

FELDMAN, Justice.

Paul Phillip Lindsey (defendant) was found guilty by a jury of two counts of incest and six counts of sexual exploitation of a minor. A.R.S. §§ 13–3608 and 13–3553. He was sentenced to concurrent terms of imprisonment: five and eight years for the incest counts and 21 years for each count of sexual exploitation. A.R.S. §§ 13–701 and 13–702. The court of appeals affirmed. *State v. Lindsey,* 149 Ariz. 493, 720 P.2d 94 (App.1985). We agree with much of the analysis applied by the court of appeals but granted review because the court misinterpreted an important principle in our previous cases. *See* Rule 31.19, Ariz.R.Crim.P., 17 A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

The issue with which we are concerned pertains to testimony offered by the state's expert, Dr. Baker, on the behavior patterns of victims of "in-home incestuous-type molesting." At 495, 720 P.2d at 96. The trial judge has discretion to allow such expert testimony where it may assist the jury in deciding a contested issue, including issues pertaining to accuracy or credibility of a witness' recollection or testimony. *State v. Chapple,* 135 Ariz. 281, 296–97, 660 P.2d 1208, 1223–25 (1983). The trial judge may exercise this discretion where there is a reasonable basis to believe that the jury will benefit from the assistance of expert testimony that explains recognized principles of social or behavioral science which the jury may apply to determine issues in the case. *Id.* Testimony of this type is not to be permitted in every case, but only in those where the facts needed to make the ultimate judgment may not be within the common knowledge of the ordinary juror. *Id.*

Given the holding in *State v. Chapple,* the court of appeals correctly concluded that the trial court did not abuse its discretion in permitting Dr. Baker's testimony on general patterns of behavior. At 497, 720 P.2d at 98. *See* McCORMICK ON EVIDENCE § 13 (E. Cleary, ed., 2d ed., 1972). We cannot assume that the average juror is familiar with the behavioral charac-

teristics of victims of child molesting. Knowledge of such characteristics may well aid the jury in weighing the testimony of the alleged child victim. Children who have been the victims of sexual abuse or molestation may exhibit behavioral patterns (*e.g.* recantation, conflicting versions of events, confusion or inarticulate descriptions) which jurors might attribute to inaccuracy or prevarication, but which may be merely the result of immaturity, psychological stress, societal pressures or similar factors as well as of their interaction. Jurors, most of whom are unfamiliar with the behavioral sciences, may well benefit from expert testimony of the general type offered in the present case and summarized in the court of appeals opinion. *See* p. 495, 720 P.2d p. 96.

■ The problem that concerns us, however, is that over objection (made by motion to preclude) the expert was allowed to go beyond the description of general principles of social or behavioral science which might assist the jury in their own determination of credibility and was allowed to give specific opinions with regard to her view of credibility. These included the statement that "most people in the field feel that it's a very small proportion [of incest victims] that lie." Further, in response to whether Dr. Baker felt "that [the alleged victim] is consistent with someone who had been sexually abused by living at home with her father," the expert stated "... I think the likelihood is very strong.... I feel there's a preponderance of the evidence here."

The court of appeals held that admission of such evidence in this case was not prejudicial error because there was no specific objection and because "the door had been opened" by defense counsel's cross-examination. At 497–498, 720 P.2d at 98–99. In discussing the issue, the court of appeals made the following statement:

> Prior to trial, [defendant's] trial counsel ... objected to the use of such expert testimony because it would invade the province of the jury. He argued that its purpose was to tell the jury that the victim ... was telling the truth. We

believe this objection is the fear expressed in the dissenting opinion of Justice Hays in *State v. Chapple, supra*.... Although we are, respectfully, inclined to agree with Justice Hays' concerns, we believe our supreme court has rejected these views and we are bound to follow its direction.

At 497, 720 P.2d at 98.

If the court of appeals intended to indicate that this court approved of the admission of direct testimony on the question of credibility, it is incorrect. The purpose of allowing behavioral evidence in these cases is to give the jury information which it may use in weighing the evidence to determine accuracy or credibility of a witness. It is not to "tell the jury" who is correct or incorrect, who is lying and who is truthful. Such testimony is tantamount to expert evidence on the question of guilt or innocence. We *do not* permit such testimony.

So that there will be no mistake on this issue, we repeat and reaffirm our words from *State v. Chapple.*

> We believe that the "generality" of the testimony is a factor which favors admission. Witnesses are permitted to express opinions on ultimate issues but are not required to testify to an opinion on the precise questions before the trier of fact.

135 Ariz. at 292, 660 P.2d at 1219. Later, after holding that the general testimony of the identification expert in *State v. Chapple* should have been admitted, we used the following language:

> In reaching this conclusion, we do not intend to "open the gates" to a flood of expert evidence on the subject.... The rule in Arizona will continue to be that in the usual case we will support the trial court's discretionary ruling on admissibility of expert testimony on eyewitness identification. *Nor do we invite opinion testimony in even the most extraordinary case on the likelihood that a particular witness is correct or mistaken in identification or that eyewitness identification in general has a certain percentage of accuracy or inaccuracy.*

135 Ariz. at 297, 660 P.2d at 1224 (emphasis supplied).

If those words were not clear enough, we explicitly state at this time that trial courts should not admit direct expert testimony that quantifies the probabilities of the credibility of another witness. *Cf. State v. Buell*, 22 Ohio St.3d 124, 489 N.E.2d 795 (1986) (holding admissible expert testimony concerning factors that may impair eyewitness identification, and rejecting that concerning a particular eyewitness' credibility and the statistical probability of eyewitness misidentification).

■ Thus, even where expert testimony on behavioral characteristics that affect credibility or accuracy of observation is allowed, experts should not be allowed to give their opinion of the accuracy, reliability or credibility of a particular witness in the case being tried. Nor should such experts be allowed to give opinions with respect to the accuracy, reliability or truthfulness of witnesses of the type under consideration. Nor should experts be allowed to give similar opinion testimony, such as their belief of guilt or innocence. The law does not permit expert testimony on how the jury should decide the case. *Fuenning v. Superior Court*, 139 Ariz. 590, 600 n. 8, 680 P.2d 121, 131 n. 8 (1983) (quoting comment, Rule 704, Ariz.R.Evid., 17A A.R.S.); *see also State v. Huey*, 145 Ariz. 59, 64, 699 P.2d 1290, 1295 (1985) (expert testimony on rape trauma syndrome admissible on lack of consent, not guilt issue); *State v. Williams*, 133 Ariz. 220, 227–28, 650 P.2d 1202, 1209–10 (1982) (opinions of witnesses regarding truthfulness and guilt are generally inadmissible).

In reaching this conclusion, we think it best to characterize our concern. The rules of evidence do permit expert testimony on ultimate issues. Rule 704, Ariz.R. Evid., 17A A.R.S.; *State v. Williams*, 132 Ariz. 153, 160, 644 P.2d 889, 896 (1982). However, the expert's function is to provide testimony on subjects that are beyond the common sense, experience and education of the average juror. Rule 702, Ariz.R.Evid., 17A A.R.S.; *State v. Wil-*

*liams, supra.* Certainly, the behavioral patterns of young victims of incest or child molestation fall into that category. It is not the expert's function, however, to substitute himself or herself for the jury and advise them with regard to the ultimate disposition of the case. Under our Constitution, not even the judge may do that. Ariz. Const. art. 6, § 27.

Opinion evidence on who is telling the truth in cases such as this is nothing more than the expert's opinion on how the case should be decided. We believe that such testimony is inadmissible, both because it usurps the jury's traditional functions and roles and because, when given insight into the behavioral sciences, the jury needs nothing further from the expert. We do not invite battles of opposing experts testifying to opinions about the truthfulness of the prosecution witness as compared to that of the defense witnesses.

Having determined that the direct testimony on credibility (*supra* pp. 494–495, 720 P.2d pp. 95–96) should not have been admitted, we turn now to the question of whether there was reversible error. The court of appeals held that there was none. It based that conclusion on two factors. The first was that, aside from the preliminary motion to preclude, there was "no objection to any of the expert testimony." At 497, 720 P.2d at 98. More important, the court believed that the only truly inadmissible portion of the testimony was elicited on redirect examination and that whatever error did occur was invited. It stated

Although we are hesitant to rely upon the doctrine of waiver, we believe that [defense] counsel did open the door and cannot now claim on appeal that the redirect testimony of the expert constituted reversible error.

At 498, 720 P.2d at 99. We do not agree with the court's analysis.

Defendant had objected to the expert testimony in issue. Prior to trial, defense counsel moved to preclude testimony from Dr. Baker "in any way concerning the credibility or truth telling capacities ... of alleged victims of child molestation." The

motion argued the inadmissibility of such testimony, citing *Frye v. United States*, 293 Fed. 1013 (D.C.Cir.1923), Rules 602, 703 and 402, Ariz.R.Evid., 17A A.R.S. and various Arizona cases, including *State v. Dickey*, 125 Ariz. 163, 169, 608 P.2d 302, 308 (1980), which affirmed the trial court's exclusion of testimony that the expert believed the defendant. In the present case the trial court denied defendant's motion, stating Dr. Baker would be allowed "to testify generally [to] the credibility of children in child molestation cases."

However, the court expressly directed the attorneys to refrain from inquiring into the credibility of the specific alleged victim in the case before him. Defense counsel then inquired whether the court meant that the state was forbidden to inquire into the expert's belief as to the credibility of that witness. The court indicated that was his ruling. The following colloquy then took place:

> Defense counsel: Judge, ... there's a way that [the state] is going to back door that issue that I think the Court should be aware of. And I'm not sure how the court will treat this, but what Doctor Baker will do when she's talking about generalities, she'll give percentages and say ...—and she did this in the interview —... ninety-nine percent or something [of these victims] are telling the truth.... And that's just basically a back door way of getting specific.
>
> The court: No, I think that an expert can testify in that area even where it goes to credibility, which is an ultimate issue for the jury to decide.
>
> Defense counsel: So[,] she can get into the area that ... ninety-nine percent or whatever of these people tell the truth?
>
> The court: Yes, ... I'll allow that.

■ We believe that the portion of the record quoted above, when taken together with the written motion to preclude, clearly indicates that the court was aware that counsel objected to testimony regarding the credibility both of the victim as well as of all victims in general.

It is true that no further objection was made at the trial. However, when a motion to preclude "is made and ruled upon, the objection raised in that motion is preserved for appeal, despite the absence of a specific objection at trial." *State v. Burton*, 144 Ariz. 248, 250, 697 P.2d 331, 333 (1985); *see also State v. Ellerson*, 125 Ariz. 249, 251, 609 P.2d 64, 66 (1980). The trial court clearly ruled that opinion evidence regarding the alleged victim's credibility was inadmissible but that such evidence regarding the credibility of victims in general was admissible. There was no waiver by failing to object further during trial.

We also disagree that the defendant's objection was waived by defense counsel's "opening the door" to the testimony ruled inadmissible by the trial court. During direct examination the state asked Dr. Baker the following:

> Based on the work you have done ... and the literature and ... your background and training, did you have an opinion as to what proportion of victims in these sorts of cases ... are lying about this happening ...?
>
> Answer: Well, there aren't too many statistics on that. The one statistic that I have found came from this Santa Clara [project].... [T]heir figures were that it was possibly one percent that lied. But I don't know that that's totally accurate. But in general, most people in the field feel that it's a very small proportion that lie.

Thus, having previously obtained the court's ruling that such testimony would be permitted, the state had the expert quantify the proportion of victims who would tell the truth. Such testimony is directly contrary to the principles set forth in *Chapple* and reaffirmed earlier in this opinion. Quantification of the percentage of witnesses who tell the truth is nothing more than the expert's overall impression of truthfulness. It goes beyond "ultimate issues" and usurps the function of the jury.

Standing alone, of course, such testimony—which falls short of an opinion about the specific witness before the jury—might

not be prejudicial error in a case in which there was ample extrinsic evidence of guilt. That was not the situation here. Furthermore, the error was compounded in the present case by testimony on redirect examination. At that time, the state asked the witness the following:

Question: What is your opinion as to whether there is consistency [in this victim's testimony]?

Dr. Baker: I think the likelihood is very strong ... but based on what I have, I feel there's a preponderance of the evidence here.

\* \* \* \* \* \*

Question: Do you think it's a pretty strong indication or just kind of moderate?

Dr. Baker: I think it's fairly strong.

The court of appeals acknowledged that this direct testimony as to the expert's belief in the credibility of the particular alleged victim of the crime charged would ordinarily be inadmissible. At 497, 720 P.2d at 98. The court found, however, that the error had been invited. At 498, 720 P.2d at 99. It is the general rule that when a party procures the admission of improper evidence, the "door is open" and the opposing party may then respond or retaliate with evidence on the same subject. Any error with respect to the admission of such retaliatory evidence will generally be considered as having been waived. *State v. Alvarez,* 145 Ariz. 570, 573, 701 P.2d 1178, 1181 (1985). In essence the "open door" or "invited error" doctrine means "that a party cannot complain about a result he caused." M. UDALL & J. LIVERMORE, LAW OF EVIDENCE § 11 at 11 (2d ed. 1982).

■ Based on this principle the court of appeals held that defense counsel had waived the error in the redirect testimony by having opened the door on cross-examination when he questioned the expert about past examples of the alleged victim's lying. We do not believe the invited error doctrine is applicable to the situation presented by this case. The error had already occurred in direct examination, over counsel's objection, and he was now faced with the choice of leaving the jury with the expert's unchallenged statement that 99 percent of victims tell the truth, or of attempting by cross-examination to elicit something from the expert that might later aid him in arguing that defendant's daughter fell within the one percent group who do lie. We do not believe that such cross-examination opens any door. Having been damaged by erroneously admitted testimony, defendant "was entitled to adjust his strategy." *State v. Ellerson,* 125 Ariz. at 251, 609 P.2d at 66.

"It would indeed be a strange doctrine and a rule utterly destructive of the right ... of cross-examination, to hold a litigant to have waived his objection to improper testimony because by further inquiry he sought on cross-examination to break the force or demonstrate the untruthfulness of the evidence given in chief...."

*Tucker v. Reil,* 51 Ariz. 357, 370, 77 P.2d 203, 208 (1938) (quoting *Cathey v. M.K. & T.R. Company of Texas,* 104 Tex. 39, 42, 133 S.W. 417, 419 (1911)).

The court's ruling in the present case permitted inadmissible evidence to be adduced during direct examination. Defendant was entitled to treat that ruling as the "law of the trial" and to explain or rebut the evidence which had been admitted over his objection. Such efforts are not a waiver of the initial objection. McCORMICK ON EVIDENCE § 55 at 128 (E. Cleary, ed., 2d ed., 1972).

■ We conclude, therefore, that the trial court's error in permitting the direct opinion testimony on truthfulness was prejudicial and requires us to reverse the two counts of incest. Since guilt or innocence on these counts inherently turned on the question of the daughter's credibility, it cannot be said beyond a reasonable doubt that the jury would have convicted even in the absence of the error. *State v. Chapple,* 135 Ariz. at 297, 660 P.2d at 1224.

■ We are not compelled to reach the same conclusion, however, with respect to

the six counts of sexual exploitation. These counts were based upon photographs of the daughter taken when she was approximately fourteen years of age. The jury found they depicted sexual conduct as defined in A.R.S. § 13–3551(2)(f) in violation of A.R.S. § 13–3553. Evidence at the trial indicated that the furniture shown in the photographs was defendant's and that the site of the photography was defendant's home. The pictures were found in a locked compartment in defendant's home. There is no evidence that anyone else had taken the photographs. Because the exploitation counts do not turn on the question of credibility and are supported by overwhelming evidence, we affirm the conviction and sentence on those six counts.

For the foregoing reasons we remand this case for a new trial on the incest counts. The court of appeals' opinion, insofar as it is inconsistent with our resolution of this case, is vacated.

HOLOHAN, C.J., GORDON, JR., V.C.J., and HAYS and CAMERON, JJ., concur.

## SUPPLEMENTAL OPINION

 Defendant petitioned this court for reconsideration pursuant to Rule 31.18, Ariz.R.Crim.P., 17 A.R.S., claiming that as a result of our holding there was no longer sufficient evidence to sustain the jury's determination of defendant's guilt on the sexual exploitation counts. We have thoroughly reviewed the record and find no merit in this assertion and have denied the motion for reconsideration.

However, in reviewing the record it became apparent that the sentences for the six counts of sexual exploitation of a minor must be reduced. In imposing the 21-year sentences for each of the six counts of sexual exploitation of a minor, the trial court treated the guilty verdicts for the two incest counts as two prior convictions. See A.R.S. § 13–604(D). Because we reversed the incest convictions, there are no priors and the sentencing range for the sexual exploitation has been reduced from 14 to 28 years (class II felony with two

prior convictions) to 5.25 to 14 years (class II felony with no prior convictions). See A.R.S. §§ 13–604(D), 13–701 and 13–702(B). We therefore affirm the convictions but vacate the sentences and remand the sexual exploitation convictions to the trial court for resentencing in conformance with this supplemental opinion.