NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CASEY LEON SHOOK, *Appellant*.

No. 1 CA-CR 14-0667
FILED 10-22-2015

Appeal from the Superior Court in Maricopa County
No.  CR2011-006366-001
The Honorable Sam J. Myers, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

The Hopkins Law Office, PC, Tucson
By Cedric Martin Hopkins
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Kent E. Cattani and Judge John C. Gemmill joined.

---

**J O H N S E N**, Judge:

¶1          Casey Leon Shook appeals his convictions of seven charges of sexual conduct with a minor under the age of fifteen, Class 2 felonies; three charges of voyeurism, Class 5 felonies; two charges of kidnapping, Class 2 felonies; one charge of sexual abuse of a minor under the age of fifteen, a Class 3 felony; and one charge of threatening and intimidating, a Class 1 misdemeanor.  For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2          Shook began molesting his victim when she was about eight years old.[1]  The abuse continued until the victim was 14, when she confided in her mother, and they reported it to police.  At trial, the State's case hinged primarily on the victim's testimony, which detailed various instances of molestation over the course of six years.  The State called Wendy Dutton, an expert witness who testified about how child victims typically respond to sexual abuse.  Dutton did not have any knowledge of the facts of the case, but testified based on her experience in the field of child sexual abuse cases to explain how child victims respond, the types of symptoms they may exhibit, and how abuse affects memory.

¶3          The superior court sentenced Shook to a total of 183 years' imprisonment.  Shook filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes sections 12-120.21(A)(1) (2015), 13-4031 (2015) and 13-4033(A)(1) (2015).[2]

---

[1]          We view the trial evidence in the light most favorable to sustaining the jury's verdicts.  *State v. Nelson*, 214 Ariz. 196, 196, ¶ 2 (App. 2007).

[2]          Absent material revision after the date of an alleged offense, we cite a statute's current version.

## DISCUSSION

### A.      Alleged Prosecutorial Misconduct.

¶4        Shook first argues the prosecutor committed misconduct by vouching for the victim in closing argument. Because Shook failed to raise this objection at trial, we review for fundamental error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 19 (2005). To prevail, Shook must prove both fundamental error and resulting prejudice. *See id.* at ¶ 20.

¶5        There are two forms of prosecutorial vouching, "(1) where the prosecutor places the prestige of the government behind its witness [and] (2) where the prosecutor suggests that information not presented to the jury supports the witness's testimony." *State v. Vincent*, 159 Ariz. 418, 423 (1989). During closing argument, lawyers have wide latitude to comment on and appraise the sufficiency of the evidence presented at trial. *State v. King*, 110 Ariz. 36, 42 (1973). Counsel may not, however, give his or her personal opinion about the credibility of a witness. *State v. Lamar*, 205 Ariz. 431, 441, ¶ 54 (2003). "In determining whether a prosecutor's improper statement constitutes fundamental error, we examine, under the circumstances, whether the jurors were probably influenced and whether the statement probably denied Defendant a fair trial." *State v. Bible*, 175 Ariz. 549, 601 (1993).

¶6        Shook cites statements the prosecutor made during closing argument that he asserts impermissibly bolstered the victim's testimony. In the statements at issue, the prosecutor sought to show the victim was reliable and credible by drawing the jury's attention to the ordeal the victim endured following her first report to authorities, including several interviews with strangers, multiple medical examinations, and testifying in open court. The prosecutor implied that these circumstances indicated the victim was being truthful: "Now, does that sound like someone would be willing to go through that with a false allegation? No."

¶7        The prosecutor also discussed the victim's demeanor:

You saw her demeanor when she testified. . . . [The victim] didn't want to be here talking about these things. She wasn't excited to get up and make these false allegations and stick them to the defendant. You could tell. She was embarrassed. She was looking at the ground. She didn't want to be here. She didn't want to talk about these things. That's not someone—that's not the demeanor of someone who's making

a false allegation, someone who's out to get the defendant. That is the demeanor of someone who's talking about horrible things that happened to her when she was a little girl.

He also recounted the details of the victim's testimony, asserting that its specificity demonstrated its truthfulness: "How specific is that? . . . a 13 or a 14-year-old girl who's gonna make up accusations is not gonna come up with stuff like that, that specific, that detailed. . . . That's not something that someone makes up who's making a false allegation."

¶8　　　　These statements did not constitute prosecutorial misconduct, much less fundamental error that deprived Shook of a fair trial. Viewed in context, the prosecutor's statements neither impermissibly placed the weight of the government behind the victim's testimony nor put forth the prosecutor's personal opinion of her credibility. Instead, the prosecutor was permissibly arguing the victim's credibility based on her demeanor and the detail of her account.

¶9　　　　A prosecutor's personal assurances of a witness's truthfulness are improper. *See Vincent*, 159 Ariz. at 423 (statement by prosecutor, that "the State wouldn't have put [the witness] on the witness stand if [it] didn't believe every word out of his mouth," constituted impermissible vouching); *King*, 110 Ariz. at 41-43 (prosecutor's statements that "I don't think [the witness] ever lied to you. . . . The State believes she was telling the truth," constituted improper vouching). But arguing a witness's credibility is not improper. *See State v. Haverstick*, 234 Ariz. 161, 165-66, ¶ 7 (App. 2014) (prosecutor's repeated argument that witness was "*credible in every way possible*" and that her demeanor "*was not faked*" did not, in context, constitute impermissible vouching); *State v. Ramos*, 235 Ariz. 230, 238, ¶ 30 (App. 2014) (prosecutor's statement that "what motive would [the witnesses] have to lie in a case like this?" did not constitute misconduct). Rather than affirmatively telling the jury that the State believed the victim was telling the truth, the prosecutor in this case highlighted the circumstances surrounding the victim's testimony that indicated her reliability. As such, the prosecutor's statements did not constitute improper vouching.

## B.　　Admission of Expert Testimony.

¶10　　　　Shook also argues the superior court erred in admitting Dutton's testimony. Before trial, Shook moved to preclude Dutton's testimony for some of the same reasons he now raises on appeal, but the superior court ultimately denied his motion. Shook claims that Dutton's testimony impermissibly supplanted the role of the jury by offering an

opinion about the victim's credibility. We review the superior court's admission of expert testimony for an abuse of discretion. *State v. Salazar-Mercado*, 234 Ariz. 590, 594, ¶ 13 (2014).

**¶11** Under Rule 702 of the Arizona Rules of Evidence, our courts have permitted expert testimony about general behavior patterns of child sexual abuse victims when it may be helpful to the jury in evaluating a victim's testimony. *See Salazar-Mercado*, 234 Ariz. at 594, ¶ 15; *State v. Lujan*, 192 Ariz. 448, 452, ¶ 12 (1998); *State v. Lindsey*, 149 Ariz. 472, 473-74 (1986). Although such testimony may provide the jury with information helpful in assessing a witness's credibility, the expert may not go so far as to render an opinion on a particular witness's truthfulness. *See Lindsey*, 149 Ariz. at 474.

**¶12** Here, Dutton testified in a manner permitted by *Salazar-Mercado* and the other cases. She never rendered an opinion about the victim's credibility, and she limited her testimony to general behavioral patterns of child victims of sexual abuse. Although Shook argues that the prosecutor's questions impermissibly sought to align Dutton's testimony with the specific facts of the case and the specific characteristics of the victim, Dutton's testimony did not go beyond informing the jury about general principles of social and behavioral science. As our supreme court has noted,

> [w]e cannot assume that the average juror is familiar with the behavioral characteristics of victims of child molesting. . . . Children who have been the victims of sexual abuse or molestation may exhibit behavioral patterns (*e.g.* recantation, conflicting versions of events, confusion or inarticulate descriptions) which jurors might attribute to inaccuracy or prevarication, but which may be merely the result of immaturity, psychological stress, societal pressures or similar factors as well as of their interaction. Jurors, most of whom are unfamiliar with the behavioral sciences, may well benefit from expert testimony . . . .

*Lindsey*, 149 Ariz. at 473-74.

**¶13** Dutton's testimony focused primarily on child victims' responses to sexual abuse and how trauma affects their recollection and memory formation. She specifically addressed various "myths" about child sexual abuse, challenging preconceived notions an average juror may have when viewing the behavior and testimony of a child victim. Dutton's

testimony could have helped explain why the victim in this case would have waited to report the abuse and why her recollection was confused or unclear at times. Dutton did not offer an opinion on whether the victim was telling the truth. Given the Arizona Supreme Court's approval of this type of limited general testimony to assist the jury in evaluating a child victim's testimony, we conclude the superior court did not abuse its discretion when it allowed Dutton to testify.

## CONCLUSION

¶14 For the foregoing reasons, we affirm Shook's convictions and resulting sentences.



Ruth A. Willingham · Clerk of the Court
FILED: ama