NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

MICHAEL BLAINE SCHAEFFER, *Appellant.*

No. 1 CA-CR 16-0865
FILED 3-1-2018

Appeal from the Superior Court in Maricopa County
No. CR2013-430835-001
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Eric Knobloch
*Counsel for Appellee*

The Law Office of Kyle T. Green, P.L.L.C., Tempe
By Kyle T. Green
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge Patricia A. Orozco[1] joined.

---

**C R U Z**, Judge:

¶1        Michael Blaine Schaeffer appeals his convictions for sexual abuse, sexual conduct with a minor, and molestation of a child, claiming the superior court erred when it denied a pretrial motion to suppress and erred when it allowed other-act evidence that it should have precluded. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        Between 2003 and 2004, Schaeffer's brother and sister-in-law adopted three children, including H.S., who was then four years old. Schaeffer was close to his brother's family and spent a lot of time with them. Schaeffer would play games with H.S. and her siblings, including wrestling.

¶3        As H.S. grew older, Schaeffer's wrestling involved more touching, including touching H.S.'s breasts and legs. When H.S. was roughly ten or eleven, Schaeffer put his mouth on H.S.'s breast and touched her genitals. H.S. told her sister of the abuse, but did not tell her everything, and hid the abuse from her parents because she did not think they would believe her.

¶4        In October 2012, H.S. posted on the internet that Schaeffer abused her. H.S.'s father discovered the post, but H.S. told him it was fake, as she continued to fear he would not believe her. H.S.'s parents limited Schaeffer's contact, however, the abuse did not stop. Finally, in May 2013, after Schaeffer again touched H.S.'s genitals, H.S. broke down and told her father of the abuse, who then contacted the police.

¶5        Police interviewed Schaeffer, who admitted to wrestling with H.S. and touching her breasts and genitals. He was charged with sexual abuse, sexual conduct with a minor, and molestation of a child. All the

---

[1]        The Honorable Patricia A. Orozco, retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

charges pertained to Schaeffer's conduct with victim, H.S., who was a minor under the age of fifteen at the time of the incidents.

**¶6**        Prior to trial, Schaeffer filed a motion to suppress his statements made during a police interview, claiming they were involuntary. Following an evidentiary hearing the court denied Schaeffer's motion, finding his statements were knowingly, intelligently, and voluntarily made.

**¶7**        During questioning at trial, prejudicial testimony was given by H.S.'s mother, and the court declared a mistrial. Before a new trial could be set, and as a result of H.S.'s testimony at the first trial that Appellant had touched her breasts and genitals in the course of wrestling between the two, Schaeffer moved to preclude the admission of any evidence regarding wrestling between Appellant and H.S. After an evidentiary hearing, the court, in a well-reasoned written decision, found the other acts of wrestling were probative, were not unfairly prejudicial, and provided a reasonable basis to believe Schaeffer had a character trait giving rise to an aberrant sexual propensity. The court found the evidence admissible under Arizona Rule of Evidence ("Rule") 404(c), as well as admissible under 404(b) as proof of Schaeffer's opportunity, intent, plan, and preparation.

**¶8**        At the conclusion of the second trial, the jury found Schaeffer guilty of sexual abuse, sexual conduct with a minor, and molestation of a child. Schaeffer was sentenced to prison. Schaeffer timely appealed. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1), 13-4031, and -4033(A).

## DISCUSSION

I.    Motion to Suppress

**¶9**        Schaeffer argues the superior court erred when it denied the pretrial motion to suppress his admissions.

**¶10**       We review the superior court's denial of a motion to suppress for an abuse of discretion, but we review its legal conclusions *de novo*. *State v. Peterson*, 228 Ariz. 405, 407, ¶ 6 (App. 2011). We review only the evidence presented at the hearing, and we view the facts in the light most favorable to upholding the superior court's ruling. *State v. Gay*, 214 Ariz. 214, 217, ¶ 4 (App. 2007). We will not disturb a motion to suppress on appeal unless there is a clear and manifest error. *Peterson*, 228 Ariz. at 407, ¶ 6.

¶11        Schaeffer argues that statements he made to the detective during two interviews held two weeks apart in the month of June 2013 were involuntary, and should have been suppressed.  He argues the detective that interviewed him on June 28 used a slight implied promise to get Schaeffer to confess, and that he made the statements in the absence of required *Miranda* warnings.  *See Miranda v. Arizona*, 384 U.S. 436 (1966).

¶12        Voluntariness of a confession and *Miranda* violations are two distinct inquiries: *Miranda* relates to the admissibility of a confession based upon a defendant being apprised of his rights, not to a confessions' voluntariness.  *State v. Tapia*, 159 Ariz. 284, 286 (1988).

¶13        *Miranda* requires that law enforcement officers notify persons of their rights before interrogating them.  384 U.S. at 478-79.  However, *Miranda* does not become applicable until the person is placed in custody.  *Id.*  "Custody" for *Miranda* purposes "is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion."  *State v. Maciel*, 240 Ariz. 46, 49, ¶ 12 (2016).  "*Miranda* custody requires not only curtailment of an individual's freedom of action, but also an environment that 'presents the same inherently coercive pressures'" as to threaten to subjugate the individual to the examiner's will.  *Id.* at ¶¶ 12, 16.

¶14        A person is not in custody if a "reasonable person" in the same circumstances would feel "at liberty to terminate the interrogation and leave."  *Howes v. Fields*, 565 U.S. 499, 509 (2012).  Factors relevant to this determination are: the location of the questioning; its duration; statements made during the interview; the presence or absence of physical restraints; and the release of the interviewee at the end of questioning.  *Id.*  Confronting an accused with evidence of guilt does not necessarily require administering *Miranda* warnings, and the fact the interview takes place in a police station, by an officer, and the individual may be a suspect, does not entail custody for purposes of *Miranda*.  *State v. Cruz-Mata*, 138 Ariz. 370, 373 (1983).

¶15        Schaeffer was interviewed at the police station on two separate occasions, but was invited to the police station by officers each time.  He was never arrested or placed in handcuffs.  On the day of the second interview, Detective Ferullo wore jeans and a polo, and repeatedly advised Schaeffer that he was free to leave at any time.  While the interview did last for three hours, this does not itself define custody.  *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004) (affirming state court's application of the custody standard even where the interview lasted two hours).  At the

end of the exchange Schaeffer himself acknowledged the voluntary nature of the interview, and freely left the station. Based on these facts, the court determined that Schaeffer was not in custody and thus no *Miranda* warning was required.

**¶16**　　　"In Arizona, confessions are prima facie involuntary and the burden is on the state to show they are voluntary." *State v. Hall*, 120 Ariz. 454, 456 (1978). Confessions are considered involuntary if there is impermissible police conduct, coercive pressures that are not dispelled, or a confession is derived directly from a prior involuntary statement. *State v. Rivera*, 152 Ariz. 507, 513 (1987). A confession is also involuntary if it is obtained by a direct or implied promise. *State v. Strayhand*, 184 Ariz. 571, 585 (1995). The determination whether a confession is voluntary is based on a totality of the circumstances. *Tapia*, 159 Ariz. at 287-88.

**¶17**　　　Schaeffer argues that Detective Ferullo lied to him by stating that H.S.'s father had passed a voice analysis test, and Detective Ferullo "promised that things were going to be better for [him] if he would just confess." According to Schaeffer, these circumstances, paired with the lack of *Miranda* warning and the duration of the interview, indicate his statements were involuntary.

**¶18**　　　As discussed above, Schaeffer was not in custody, nor does he argue either interview was custodial in nature, thus no *Miranda* warning was required on the basis of police custody. The fact the interview lasted a few hours does not render the statements involuntary either. *See State v. Trostle*, 191 Ariz. 4, 14 (1997) (finding seven-hour interview did not render statements involuntary where the defendant freely answered questions and "did not ask to stop or take a break"). While Schaeffer claims that Detective Ferullo lied to him, the police are not precluded from engaging in a ruse to obtain information. *See State v. Carillo*, 156 Ariz. 125, 136 (1988); *see also Tapia*, 159 Ariz. at 289 (stating that a confession induced by fraud is not made involuntary unless there is some evidence that the defendant's will was overborne or that the confession was false or unreliable). In contrast, Schaeffer denied his will was overborne and stated that Detective Ferullo "did not twist his arm."

**¶19**　　　Schaeffer argues Detective Ferullo used an implied promise, albeit slight, and this contributed to the involuntariness of his statements. However, Schaeffer did not point to any evidence indicating that a deal was offered, a promise was made, or threat asserted. Mere advice from the police that it would be better for the accused to tell the truth, or that "things were going to be better for [him] if he would just confess" and that Schaeffer

5

should "just tell the truth," in the absence of such deals, promises, or threats, does not render a confession involuntary. *State v. Blakley*, 204 Ariz. 429, 436, ¶¶ 27, 29 (2003); *State v. Walton*, 159 Ariz. 571, 579 (1989) (finding that statements such as "[i]t's nothing that can't be worked out" and "to lie isn't going to help" were the detective's opinions and not an express or implied promise). Lastly, even if Detective Ferullo's statements constituted a promise, Schaeffer has not shown that his confession was based on a reliance on such a promise. *State v. Pettit*, 194 Ariz. 192, 197-98, ¶¶ 22-23 (App. 1998).

**¶20**　　　　Based on the totality of the circumstances, we cannot say the court abused its discretion when it found Schaeffer's statements were made voluntarily. We hold the court's denial of Schaeffer's motion to suppress was proper.

II.　　　Other-Act Evidence

**¶21**　　　　Schaeffer argues the superior erred when it allowed other-act evidence that should have been precluded.

**¶22**　　　　We review a court's decision to admit evidence for an abuse of discretion, but review its legal conclusions *de novo. Peterson*, 228 Ariz. at 407, ¶ 6. We view the facts in the light most favorable to sustaining the superior court's ruling, *Gay*, 214 Ariz. at 217, ¶ 4, and will uphold the court's ruling unless there is a finding of clear prejudice, *State v. Fischer*, 219 Ariz. 408, 416, ¶ 24 (App. 2008).

**¶23**　　　　Rule 404(b) allows for the admission of evidence of other acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The list of proper purposes in Rule 404(b) is not exhaustive; evidence that is relevant for any purpose other than to show the defendant's criminal propensity is admissible. *State v. Jeffers*, 135 Ariz. 404, 417 (1983). Under Rule 404(b), a court must find: (1) the evidence is relevant under Rule 402; (2) the evidence is offered for a proper purpose under Rule 404(b); (3) the probative value of the evidence is not substantially outweighed by the potential for unfair prejudice under Rule 403; and (4) there is clear and convincing evidence that the defendant committed the other act. *State v. Mott*, 187 Ariz. 536, 545-46 (1997); *State v. Terrazas*, 189 Ariz. 580, 584 (1997). Upon admission, and if requested, a court must provide an appropriate limiting instruction under Rule 105. *Mott*, 187 Ariz. at 546.

**¶24**　　　　In cases of sexual misconduct, other-act evidence may also be admitted to show the defendant has a character trait giving rise to an

aberrant sexual propensity to commit the charged offense. Ariz. R. Evid. 404(c). Before admitting propensity evidence, the court must find: (1) sufficient evidence that the defendant committed the other act; (2) the other-act evidence provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged; and (3) the probative value of the other act is not substantially outweighed by a danger of unfair prejudice or confusion of the issues under Rule 403. *Id.* Rule 404(c)(1)(C) provides that, when deciding whether to admit such evidence to show propensity, the court shall consider, among other things, the remoteness of the other act, the similarity or dissimilarity of the other act, the frequency of the other act, the surrounding circumstances, and any relevant intervening events.

¶25 Schaeffer was charged with multiple counts of sexual conduct with H.S., some of which occurred while he was wrestling with her. However, not every wrestling event led to a charge. As such, the State sought to introduce testimony of those other wrestling events as other-act evidence under Rule 404(b). The State argued that it showed Schaeffer's intent to engage H.S. in physical touch, preparation to create a touching and sexual relationship with H.S., and disproved any claim or theory that Schaeffer's later contact was due to mistake or accident. The State further argued the other-acts evidence, Schaeffer's repeated acts of sexually touching H.S., was admissible under Rule 404(c) to show he had an aberrant sexual propensity to commit the current charges.

¶26 Schaeffer admitted to wrestling with H.S. and admitted that he may have touched H.S.'s breasts while wrestling. However, Schaeffer contended that such touching was innocent, unintentional behavior, not grooming.

¶27 The court held a Rule 404 hearing on August 29, 2016. The State presented a cold expert who testified regarding grooming behavior and wrestling behavior, but not on specifics to the case. The State supplemented its argument with H.S.'s testimony during the first trial where H.S. discussed the other acts occurring.

¶28 After taking the matter under advisement, the court found the other-acts evidence was relevant, its relevance was not substantially outweighed by the potential for unfair prejudice, and that Schaeffer committed the acts. The court admitted the evidence under Rule 404(c), as evidence of grooming and a sexual propensity to commit the crimes charged, and found that even if the court did not find the wrestling

admissible under Rule 404(c), it would have been admissible under Rule 404(b) as proof of Schaeffer's opportunity, intent, plan, and preparation.

¶29            Schaeffer argues the court erred when it used the cold expert's testimony to find the evidence accurate, reliable, and credible. Schaeffer cites *State v. Lindsey*, 149 Ariz. 472, 474-75 (1986), to argue that while the cold expert was permitted to testify about general behavior patterns, the law precludes the use of expert testimony to establish accuracy, reliability, or credibility.

¶30            In *State v. Lindsey*, the expert testified in front of the jury concerning the behavioral characteristics of victims of child molestation, but then went beyond the description of general principles and gave specific opinions regarding the credibility of certain witnesses. *Id.* at 474. Our supreme court held the admission of such testimony was error, as it was not the purview of the expert to "tell the jury who is correct or incorrect[.]" *Id.* (Internal quotations omitted.) Experts should not be permitted to give their opinions with respect to the accuracy, reliability, or credibility of a particular witness, nor should they give their belief regarding guilt or innocence. *Id.* at 475. The court then went on to hold the admittance of such testimony was prejudicial and reversed two of the defendant's counts, "[s]ince guilt or innocence on these counts inherently turned on the question of the [witness'] credibility[.]" *Id.* at 477.

¶31            Here, the expert testified regarding the general principles of behavioral and social science, no more. Further, she did so at an evidentiary hearing. The court, familiar with H.S.'s testimony from the first trial and Schaeffer's admissions, had sufficient evidence to support its findings. At no point did the expert testify in a way that intruded upon the fact-finding role of the court. Schaeffer cites no law holding that the court, in a Rule 404 hearing, may not rely on an expert's testimony regarding general principles to support its determination.[2]

¶32            Given that the cold expert's testimony was admissible and did not go beyond the purview of general principles, the court acted within its discretion in relying on that testimony to determine the admissibility of the other-acts evidence. The court considered the remoteness of the acts, their similarity, and the strength of the evidence, in finding them relevant and admissible. *See* Ariz. R. Evid. 404(c)(1)(C). We hold the court did not

---

[2]      This is not a case where expert testimony in front of the jury is being challenged as inadmissible. Whether and to what extent an expert testified at trial are separate issues, not raised by Schaeffer.

err when it admitted evidence of other incidents of wrestling and touching as other-acts evidence pursuant to Rule 404(b) and (c).

## CONCLUSION

¶33        For the foregoing reasons, we affirm Schaeffer's convictions and sentences.

