NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

VICTOR MARTIN CABALLERO, *Appellant*.

No. 1 CA-CR 20-0599
FILED 10-26-2021

---

Appeal from the Superior Court in Maricopa County
No. CR 2019-117618-001
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mark E. Dwyer
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Maurice Portley[1] joined.

---

**C A M P B E L L**, Judge:

¶1   Victor Caballero appeals his convictions and sentences for two counts of aggravated domestic violence. Because he has shown no reversible error, we affirm.

**BACKGROUND[2]**

¶2   While speaking with a 9-1-1 operator, Caballero's teenage son (the Son) reported that Caballero had hit him "in [his] eye," "hit [his] grandma" (Grandmother), and then fled from Grandmother's house. In response to the call, a patrol officer drove to the house and spoke to the Son and Grandmother. Grandmother recounted that she had been sweeping her floor when she saw Caballero enter her home through a back door. She told Caballero that he was not allowed in her house, and he began yelling at her and pushed her against a wall. The Son said that Caballero broke a security screen off a window as he left the house. While speaking to the Son, the officer observed that his left eye was red and slightly swollen.

¶3   Meanwhile, two other officers canvassed Grandmother's neighborhood, eventually locating Caballero a short distance away. While taking Caballero into custody, an officer observed that he smelled like alcohol, had bloodshot, watery eyes, slurred his words, and appeared intoxicated, as the Son had described to the 9-1-1 operator.

¶4   The State charged Caballero with two counts of aggravated domestic violence. The State also alleged aggravating circumstances, that Caballero had historical prior felony convictions, and that he committed the offenses while on probation.

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

[2] We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

**¶5**         At trial, Grandmother denied Caballero had entered her home on that day. When confronted with her prior inconsistent statements to the responding patrol officer, Grandmother at first testified that she could not remember making those statements about her son. After further questioning, however, Grandmother admitted that she told the officer that Caballero pushed her, but claimed she made it up because she wanted the police to "help him, to take him." Stating she had "made a mistake" and did not "know what [she] was saying [to the officer]," Grandmother testified that she wanted the case dismissed. Although subpoenaed by the State, the Son did not appear at trial.

**¶6**         After Grandmother testified, the prosecutor called a detective assigned to the police department's domestic violence unit to testify as a "cold" expert on victim recantation. Without addressing Grandmother's testimony, the detective explained that domestic violence victims often recant and refuse to cooperate in the prosecution of their family members because of financial dependence, fear of physical retaliation, or emotional attachment.

**¶7**         After a three-day trial, a jury convicted Caballero as charged and found that he had (1) caused physical harm to the Son, and (2) committed the offenses while on felony probation.[3] The superior court later found Caballero had two historical prior felony convictions and sentenced him, as a Category 3 repetitive offender, to concurrent, mitigated terms of 3.5 years imprisonment, awarding him 232 days of presentence credit. Caballero timely appealed.

## DISCUSSION

**¶8**         As his sole issue on appeal, Caballero challenges the admission of the detective's expert opinion testimony related to domestic violence victims.[4] He contends that "the question at issue" about

---

[3]     At trial, Caballero's probation officer testified that Caballero was on probation on that day, having been convicted of two prior domestic violence offenses. At sentencing, however, the State dismissed the allegation that the offenses were committed while Caballero was on probation, making the "not less than the presumptive sentence" provision of A.R.S. § 13-708(C) inapplicable.

[4]     In a footnote in his opening brief, Caballero also asserts that the State repeatedly used leading questions to solicit hearsay testimony at trial. That said, Caballero waived this issue by failing to develop a legal argument. *See State v. Sanchez*, 200 Ariz. 163, 166, ¶ 8 (App. 2001).

recantation "was well within the purview of the jury" and expert opinion testimony on the matter was unnecessary. He also argues that the superior court improperly permitted the detective to opine "whether [Grandmother] was testifying truthfully."

**¶9**       We generally review a superior court's ruling on the admissibility of expert opinions for an abuse of discretion. *State v. Chappell*, 225 Ariz. 229, 235, ¶ 16 (2010). To preserve a challenge to the admissibility of evidence, a party must move to preclude the evidence by either a motion or "a specific, contemporaneous objection to its admission." *State v. Moody*, 208 Ariz. 424, 441, ¶ 39 (2004). "The motion or objection must state specific grounds in order to preserve the issue on appeal," *id.*, and "an objection to the admission of evidence on one ground will not preserve issues relating to the admission of that evidence on other grounds." *State v. Hamilton*, 177 Ariz. 403, 408 (App. 1993).

**¶10**      At trial, defense counsel objected to the detective testifying as an expert, contending the prosecutor failed to adequately disclose the detective's prospective testimony. Given the prosecution's multiple notices that the detective may be called to testify as an expert witness about "*domestic violence, the domestic violence cycle, recantation, and victimology*," the superior court properly overruled defense counsel's objection.

**¶11**      Because Caballero objected to the detective's expert testimony based only on the adequacy of the prosecution's disclosure, not the bases he now raises, we review his appellate claim only for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005). Fundamental error goes to the foundation of the case, deprives the defendant of a right essential to his defense, or is of such magnitude that the defendant could not possibly have received a fair trial. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Under fundamental error review, the defendant bears the burden of proving both error and resulting prejudice. *Henderson*, 210 Ariz. at 567, ¶ 20.

**¶12**      Under Arizona Rule of Evidence (Rule) 702, a witness "who is qualified as an expert" by knowledge or experience may render opinion testimony if the witness's "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." In evaluating whether expert opinion will assist the trier of fact, the superior court serves as a gatekeeper, "with the aim of ensuring such testimony is reliable and helpful to the jury." *State v. Romero*, 239 Ariz. 6, 9, ¶ 12 (2016) (citing Ariz. R. Evid. 702 cmt. (2012)). An expert's testimony "is not objectionable just because it embraces an ultimate issue," Ariz. R. Evid. 704(a), but "[i]n a

4

criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." Ariz. R. Evid. 704(b).

¶13        While relevant evidence is generally admissible, Ariz. R. Evid. 402, it may be excluded if its probative value "is substantially outweighed" by a danger of unfair prejudice. Ariz. R. Evid. 403. Subject to the limitations of Rule 403, the testimony of a qualified "cold" expert who "educates the trier of fact about general principles but is not tied to the particular facts of the case" is admissible, despite Rule 702(d)'s requirement that the expert must "reliably appl[y] the principles and methods to the facts of the case." *State v. Salazar-Mercado*, 234 Ariz. 590, 595, ¶ 21 (2014).

¶14        Applying this framework, we consider the detective's expert opinion testimony. Caballero does not dispute the detective's qualifications to render expert opinion testimony related to domestic violence and victim recantation. *See* Ariz. R. Evid. 702(a). Instead, he argues that the detective's trial testimony was inadmissible because "the facts needed to make the ultimate judgment" were wholly "within the common knowledge of the ordinary juror." Specifically, Caballero contends "[t]he possibility that a mother might lie to protect her son is completely within the knowledge and experience of any trial jury," and rather than "assist the jury," the detective's victim recantation testimony "dictated to the jury"—essentially telling the jurors that they "should only believe what [Grandmother] told the police at the time of the incident."

¶15        As explained by our supreme court, abuse victims "may exhibit behavioral patterns (*e.g.* recantation, conflicting versions of events, confusion or inarticulate descriptions) which jurors might attribute to inaccuracy or prevarication, but which may be merely the result" of other factors. *State v. Lindsey*, 149 Ariz. 472, 474 (1986); *see also State v. Moran*, 151 Ariz. 378, 381 (1986). For this reason, a trial judge has discretion to allow expert testimony about "general patterns of behavior" to aid jurors who may be "unfamiliar with the behavioral sciences." *Lindsey*, 149 Ariz. at 473-74; *see also Moran*, 151 Ariz. at 382 (explaining "[s]uch evidence may harm defendant's interests, but we cannot say it is *unfairly* prejudicial; it merely informs jurors that commonly held assumptions are not necessarily accurate and allows them to fairly judge credibility").

¶16        In no circumstance, however, may the court admit "direct testimony on the question of credibility" because "[s]uch testimony is tantamount to expert evidence on the question of guilt or innocence."

*Lindsey*, 149 Ariz. at 474; *see also Moran*, 151 Ariz. at 382-83, 385. As a result, an expert may not opine about the likelihood that a particular witness is truthful nor that "a certain percentage" of witnesses in general are truthful. *Lindsey*, 149 Ariz. at 474-75; *Moran*, 151 Ariz. at 382, 385.

¶17  Asserting it is common knowledge that parents often act to protect their children, Caballero contends that the detective's opinion testimony was not useful to the jury. This argument reflects a misunderstanding of the substance of the detective's expert opinion testimony. Rather than testifying about the nature of the parent-child relationship, the detective testified that domestic violence victims often recant their prior statements because of fear or financial or emotional dependence on the perpetrators of their abuse. The superior court properly could conclude that this testimony was admissible to help jurors—likely unfamiliar with the general patterns of behavior of abuse victims—to understand why a victim who was initially forthcoming to police officers may be uncooperative at trial. *See State v. Haskie*, 242 Ariz. 582, 586, ¶ 16 (2017) ("[E]xpert testimony that explains a victim's seemingly inconsistent behavior is admissible to aid jurors in evaluating the victim's credibility."). And contrary to Caballero's contention, the detective never opined about the veracity of Grandmother's trial testimony. In fact, on cross-examination, the detective testified that he had never spoken to either Grandmother or the Son and, when asked whether he believed they were lying, the detective responded, "I have no idea." Because the detective did not opine concerning either victims' veracity, suggest an appropriate verdict, or otherwise invade the province of the jury, Caballero has not shown his testimony was inadmissible. The superior court therefore did not err, much less commit fundamental error, by admitting the detective's testimony.

## CONCLUSION

¶18  For these reasons, we affirm.

