NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

LANCE EUGENE ROHRER, *Appellant*.

No. 1 CA-CR 22-0460
FILED 1-4-2024

Appeal from the Superior Court in Maricopa County
No. CR2020-132401-001
The Honorable Margaret B. LaBianca, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Kevin M. Morrow
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Robert W. Doyle
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge Michael S. Catlett joined.

---

**C R U Z**, Judge:

¶1 Lance Eugene Rohrer appeals his convictions for one count of conspiracy to commit first-degree murder, one count of conspiracy to commit kidnapping, and one count of conspiracy to commit theft by extortion. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL HISTORY**

¶2 During the summer of 2020, Rohrer was working for a car dealership owned by TM. Rohrer believed TM kept a large sum of money in the company safe located in his office at the dealership. Rohrer discussed with PT, his coworker, a plan to kidnap TM's son and hold him for a multimillion-dollar ransom. PT disclosed the conversation to TM who contacted the FBI. The FBI involved the Mesa Police Department, and PT agreed to serve as a confidential informant for the FBI.

¶3 PT recorded a series of conversations with Rohrer where they discussed the details of the kidnapping. These conversations included discussions about killing the child if the ransom was not received. During one conversation, PT and Rohrer decided they needed a third person to help with the kidnapping. The FBI and Mesa Police Department engaged Mesa Police Detective Francis to work undercover as the third person. Rohrer obtained easy-to-discard phones, also known as "burner phones," for the three conspirators to communicate without ease of tracing. Rohrer continued to meet with Detective Francis to discuss the kidnapping plan until Rohrer was arrested at the car dealership on August 26, 2020.

¶4 A year later, as Rohrer's case was pending trial, PT displayed a firearm at work in a roughhousing incident with a coworker ("PT's work incident"). No employee said they felt threatened and no charges were brought against PT for the incident. Prior to trial, the State moved *in limine* to prevent any testimony regarding the incident, arguing that jurors could be highly prejudiced against PT based on his display of a weapon at work. The superior court granted the motion reasoning "the probative value of

the incident [is] outweighed by the danger of confusing the issues and misleading the jury."

**¶5**        At trial, Mesa Police Detective Osborne, the department's case agent for the investigation, testified for the State. Detective Osborne was the department's case agent for the investigation. He reviewed recordings of Rohrer and was responsible for making investigative decisions. At trial Detective Osborne testified to how the recordings of Rohrer impacted his investigative decisions. Defense counsel objected to much of Detective Osborne's testimony on the grounds that Detective Osborne was improperly giving his opinion about Rohrer's mental state and that such testimony was speculative. The superior court overruled the objections.

**¶6**        Rohrer was convicted and timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A), 13-4031, and 13-4033(A).

## DISCUSSION

**¶7**        "Absent a clear abuse of discretion, we will not second-guess a trial court's ruling on the admissibility or relevance of evidence." *State v. Rodriguez*, 186 Ariz. 240, 250 (1996).

I.      Preclusion of PT's Work Incident

**¶8**        Rohrer argues that the superior court abused its discretion when it precluded evidence regarding PT's work incident. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Ariz. R. Evid. 401. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues [or] misleading the jury . . . ." Ariz. R. Evid. 403.

**¶9**        Rohrer notes the State relied on Arizona Rule of Evidence ("Rule") 404(b) in its motion to preclude PT's work incident at trial. Rohrer argues Rule 404(b) applies to evidence of other acts committed by a criminal defendant and does not apply to witnesses. Regardless of whether Rule 404(b) applies to PT, the evidence is nonetheless subject to a Rule 403 balancing test. *See State v. Leteve*, 237 Ariz. 516, 522, ¶ 11 (2015). The superior court found "the probative value of the incident [was] outweighed by the danger of confusing the issues and misleading the jury."

¶10　　Rohrer argues that evidence regarding PT's work incident is relevant and not unfairly prejudicial because it shows the bias of the FBI towards PT. Introducing PT's work incident could have created confusion or mislead the jury. The incident happened a year after Rohrer was arrested and charged, and the facts surrounding it were in dispute. Also, by the time of the work incident, PT had already been paid for his participation in the investigation and his primary role in the case was that of a foundational witness for the introduction of recordings he made during the course of the investigation.

¶11　　At trial Rohrer impeached PT regarding his work for the FBI in exchange for financial gain and a potential workplace promotion. The jury also heard testimony that the FBI paid PT for his services, that PT was known to carry a gun, and that after an incident where PT acted unprofessionally at his job he chose to leave instead of being demoted to a sales position. This testimony allowed the jury to decide whether the FBI was biased in favor of PT and what effect any bias may have had on PT's credibility. The superior court did not abuse its discretion when it precluded evidence about PT's work incident.

¶12　　Rohrer further argues the State opened the door to the need for evidence about PT's work incident when it questioned an FBI agent about the admonitions the FBI gives to confidential informants. A party opens the door for otherwise improper evidence to be introduced when "comments made by one party make otherwise irrelevant evidence highly relevant or require some response or rebuttal." *Pool v. Superior Court*, 139 Ariz. 98, 103 (1984); *see State v. Lindsey*, 149 Ariz. 472, 477 (1986).

¶13　　The FBI agent testified that PT was warned he could not engage in illegal activities just because he was working with the FBI and that he could not hold himself out as an employee of the federal government. Rohrer argues that this testimony gave jurors the impression that PT did not violate the FBI's admonitions. But the line of questioning did not delve into whether PT complied with the admonitions, simply that he was in fact warned. The superior court did not abuse its discretion when it precluded evidence about PT's work incident on this basis.

II.　　Detective Osborne Testimony

¶14　　Rohrer argues that Detective Osborne was impermissibly allowed to give his opinion as to Rohrer's state of mind when he testified to Rohrer's recordings. Lay testimony may include inferences and opinions that are "rationally based on the witness's perception" and "helpful to

clearly understanding the witness's testimony or to determining a fact in issue." Ariz. R. Evid. 701; *State v. Ayala*, 178 Ariz. 385, 387 (App. 1994).

¶15 Rohrer states that the key question in this case was his intent and that Detective Osborne's testimony was improper opinion testimony about Rohrer's recorded statements. We disagree. Detective Osborne testified to the effect of Rohrer's statements on the investigation. This testimony was helpful to the jury in understanding why the investigation proceeded in a particular way. Therefore, the superior court did not abuse its discretion when it allowed Detective Osborne to testify about the recordings.

## CONCLUSION

¶16 We affirm.

